**Barbara AUSTIN, Plaintiff–Appellant,**

v.

**Sandra BERRYMAN; Patrice Johnson; Joseph Hayes; Ralph G. Cantrell, Defendants–Appellees.**

No. 91–1750.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1991.

Decided Jan. 28, 1992.

As Amended March 2, 1992.

---

Hugh Fairley O'Donnell, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., argued for plaintiff-appellant.

Susan Troia Ferguson, Asst. Atty. Gen., Office of Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen., H. Lane Kneedler, Chief Deputy Atty. Gen., Stephen D. Rosenthal, Deputy Atty. Gen., Frank Seales, Jr., Chief and Sr. Asst. Atty. Gen., on brief), for defendants-appellees.

Before MURNAGHAN and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

MURNAGHAN, Circuit Judge:

The present case arises from prior litigation before the Fourth Circuit, wherein the plaintiff, Barbara Austin ("Austin"), challenged section 60.2–618(1)(ii) of the Code of Virginia Annotated,[1] which, *inter alia,* excludes from unemployment compensation benefits a spouse who voluntarily leaves employment to relocate with his or her spouse. Austin's challenge to the statute originally involved three theories: (1) that the statute infringed on her First Amendment right to exercise a religious belief; (2) that the statute infringed upon fundamental marital rights protected by the Fourteenth Amendment; and (3) that the statute violated the equal protection clause of

---

1. The statute was formerly codified at Va.Code Ann. § 60.1–58(a).

the Fourteenth Amendment because of its gender-based classification, in that it has a disparate impact on women, and that the statute was so intended when enacted.

We, sitting *en banc*, ruled that the first two challenges to the statute were without merit. *Austin v. Berryman*, 878 F.2d 786, 788 (4th Cir.), *cert. denied*, 493 U.S. 941, 110 S.Ct. 343, 107 L.Ed.2d 331 (1989). In so deciding, the court reversed the district court's determination that the statute was unconstitutional. *Id.* However, since the lower court had failed to reach Austin's third challenge to the statute, having already granted complete relief on the other two theories, the previously unaddressed equal protection question found itself still open. The question was heard before a district court, which held that Austin was not entitled to recovery. Thus was born the present appeal.

## I.

The statute at issue is Virginia's Unemployment Compensation Act, Virginia Code § 60.2–618(1)(ii), which provides in pertinent part:

> § 60.2–618. Disqualification for benefits.—An individual shall be disqualified for benefits upon separation from the last employing unit....
>
> (1) ... if the Commission finds such individual is unemployed because he left work voluntarily without good cause. As used in this chapter the term "good cause" shall *not* include (i) the voluntary leaving of work with an employer to become self-employed, or (ii) the voluntary leaving of work with an employer to accompany or to join his or her spouse to a new locality....

The above-quoted language was added to the Virginia Unemployment Compensation Act in 1979. Austin has challenged § 60.2–618(1)(ii) on an equal protection clause basis, arguing that the statute discriminates against women.

In June of 1985, Austin voluntarily left her employment with McVitty House, Inc. in Salem, Virginia, where she was employed as a laundress. She afforded no notice to her employer when she quit her job to accompany her husband in a move, approximately 150 miles away, to Castlewood, Virginia. Apparently, at the time of the move Austin was the sole wage earner for her family of four children. Subsequent to the move, Austin applied for unemployment benefits. She was disqualified for benefits pursuant to Virginia Code § 60.2–618(1)(ii) because she was determined to have voluntarily left work without good cause. She then filed suit against various officials involved with the administration of Virginia's Employment Commission ("the defendants"). She now appeals the district court's decision to uphold the statute in question and to deny her unemployment benefits.

The appeal involves only a question of law, *i.e.*, whether the district court erred in determining that the Virginia statute at issue was not violative of the equal protection clause of the Fourteenth Amendment. The facts behind the case are undisputed. Therefore, we review the district court's application of law *de novo*. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988).

## II.

In a carefully written and comprehensive opinion, the district court denied Austin the relief she sought and entered judgment for the defendants. Austin, on appeal, has contended that the district court committed reversible error in three respects: (1) in failing to consider or address the fact that the persons injured by the Virginia statute are overwhelmingly women; (2) in failing to consider the stereotypical assumptions implicit in the Virginia statute that conditions receipt of unemployment compensation on marital status; and (3) in evaluating the legislative purpose behind the statute. We take, in turn, each of Austin's allegations.

First, Austin has contended that because Virginia Code § 60.2–618 primarily impacts women negatively, the district court erred in failing to find the statute a gender-based classification. Austin places heavy reliance on one of the defendants' answers to an

interrogatory that sought information regarding the sex of persons disqualified under the Virginia statute in the last six months of 1989. According to the defendants' response, out of 713 individuals disqualified during the six months' time-frame for leaving employment to accompany a spouse, 86.8% were women. Relying on the contention that the class injured by the statute is overwhelmingly comprised of women, Austin has attempted to distinguish the Supreme Court decision of *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), thereby attempting to show an equal protection violation.

The defendants, on the other hand, have maintained that the district court correctly found the Virginia statute free of constitutional infirmity. Defendants have contended that the statute at issue is facially neutral, applying equally to males and females, rationally based and free of invidious discrimination. Moreover, defendants have insisted that Austin's disparate impact argument fails under the approach adopted by the Supreme Court in *Feeney*.

In *Feeney*, a case strikingly similar to the instant case, the Supreme Court rejected an equal protection clause attack on a statutory preference system for veterans. *Id.* at 274, 99 S.Ct. at 2293–94. Arguing that most veterans are men, the *Feeney* plaintiffs attempted to show gender discrimination based upon a disparate impact argument. In rejecting the plaintiffs' arguments, the Supreme Court set forth the framework to be used when analyzing an equal protection challenge against a facially neutral statute:

> When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionately adverse, a twofold inquiry is thus appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.... In this second inquiry, impact provides an "important starting

point," ... but purposeful discrimination is the "condition that offends the Constitution."

*Id.* at 274, 99 S.Ct. at 2293 (citations omitted).

Applying the *Feeney* test to the instant case demonstrates that Austin's challenge to the Virginia statute must fail. First, Virginia Code § 6.2–618 is facially neutral as it simply excludes from unemployment benefits those "spouses" who voluntarily terminate their employment to accompany another spouse on a move. The term "spouse" obviously includes both husbands and wives, men and women.

However, our inquiry does not end there. *Feeney* instructs us next to determine whether the purportedly gender-neutral statute is actually a classification which by design is covertly gender-based. *Id.* Austin has not demonstrated that the classification of "spouse" is, either overtly or covertly, based upon gender. As the district court correctly emphasized, Austin, herself, provided in her brief an "economic justification" for the statute at issue. As Austin pointed out, the impetus of the statute at issue could be largely attributed to public employers of military spouses who participated in Virginia's unemployment system under a method by which they were taxed on a "reimbursable basis," *i.e.*, they were required to repay the Unemployment Compensation Trust Fund an amount equivalent to the full amount of benefits that were paid out on account of any of their employees. Because of that repayment requirement, employers of military spouses had a direct financial interest in preventing the payment of unemployment benefits to the spouses of military employees who relocated with their spouse pursuant to military orders. Significantly, the language of the statute at issue, as initially proposed, covered only public employees. However, because the Virginia unemployment compensation scheme received money from the federal government, the proposed statutory language was given to the federal government to review. It was the federal government that pointed out that it was impermissible to distinguish between public and pri-

vate employees, thus resulting in a rewording of the proposed statutory language to cover *all* who voluntarily terminate their employment to accompany a spouse in relocating. Ultimately, the governing statute was enacted with that modification. With such an objective in mind, it is difficult to see any gender-based classification or covert discrimination lurking behind the language.

Moreover, the defendants have enunciated legitimate goals of the classification, namely "to insure a stable work force, to avoid a tax penalty on employers who maintain positions for employees, and to pay benefits to persons who become unemployed through no preference or fault of their own." Considering the legislative history of the Virginia statute, Austin cannot meet the first *Feeney* test because she has failed to show, in the face of a neutral statute, that the classification of "spouses" is gender-based. Accordingly, we then turn to the second element of the *Feeney* test.

The second prong of the *Feeney* test is whether the adverse effect of the statute upon women "reflects invidious gender-based discrimination." 442 U.S. at 274, 99 S.Ct. at 2293. In considering the second prong of the *Feeney* test, disparate impact can provide an indication of a constitutional violation, "but purposeful discrimination is 'the condition that offends the Constitution.'" *Feeney*, 442 U.S. at 274, 99 S.Ct. at 2293 (quoting *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971)).

Austin has attempted to distinguish, on a statistical basis, the clear mandate of the *Feeney* holding that disparate impact alone is insufficient to show a constitutional violation. Austin has argued that in *Feeney* the injured class was only 61.3% women, while in the case at bar, women comprise 86.8% of the injured class. In the face of such statistics, Austin has contended that the district court should have distinguished *Feeney* and, thus, should have concluded, on the basis of disparate impact, that the spousal classification utilized in the Virgi-

nia statute was merely "a pretext for gender discrimination."

Austin has selectively quoted *Feeney* in support of her attempt to distinguish the case. However, it is clear when viewing the *Feeney* case as a whole that Austin's challenge to the Virginia statute cannot succeed in its attempt at demonstrating invidious discrimination based merely upon a disparate impact showing. While it is, perhaps, unfortunate that the statute, in one sense, negatively impacts women who relocate with their husbands, it is obvious that the statute, viewed more broadly, also negatively impacts men who relocate with their wives, as well as both spouses whenever a husband or wife relocates to be with a marital partner (in that the total family income will suffer from the inability of husband or wife to receive the unemployment benefits).

The only real authority that Austin has cited in support of her argument is *Boren v. California Department of Employment Development*, 59 Cal.App.3d 250, 130 Cal. Rptr. 683 (1976) (holding that the equal protection clause renders unconstitutional a statute that denies unemployment compensation to a person who leaves work because of family reasons or to follow a spouse). However, in the face of the clear United States Supreme Court mandate subsequently handed down in *Feeney*, the California court's opinion loses any persuasive value. Because Austin has failed to satisfy either prong of the *Feeney* test, her first point of error must be rejected.

■ In her second point of error, Austin has contended that the district court erred in failing "to consider the stereotypical assumptions implicit in the statute." Essentially, Austin's argument is that because "the history of women in the work force reflects a constant struggle to overcome stereotypical biases about the relationship of work to marriage," and because the Virginia statute allegedly "denigrates women's efforts in the workplace," the district court's "failure to address the issue of stereotype constitutes legal error." Austin cites a footnote in the *Feeney* opinion as support for her broad argument. How-

ever, *nowhere* in the *Feeney* opinion, and certainly not in the footnote cited by Austin,[2] does the Court "explicitly recognize that proper equal protection analysis call[s] for a consideration of the role of stereotypes in a legislative classification," a characterization which Austin has attempted to employ. Even if we strain to read the language of the footnote as Austin characterizes it, it simply does not support her argument. While a trial court is to examine a statute to determine whether it is a pretext for gender discrimination, the court is not specifically required to analyze the historical role of stereotypes in legislative classifications. Accordingly, the district court's failure expressly to address stereotypes is not error.

Finally, Austin has insisted that the lower court erred in analyzing and evaluating the legislative intent behind the Virginia statute. Austin argues that she has sufficiently shown invidious discrimination by demonstrating that at least one of the defendants "actively participated in the legislative process with specific knowledge that the law would mainly hurt women workers." Once again, Austin has attempted to distinguish the *Feeney* case. This time, Austin would distinguish *Feeney* in that the statutory preference system favoring veterans had a "lofty gender-neutral goal readily apparent." Unlike the statute at issue in *Feeney*, Austin has maintained that the classification contained in the Virginia statute has no substantial relationship to any important state interest. Essentially, Austin has argued that the legislature of Virginia and the defendants, in enacting Virginia Code § 60.2–618, were motivated, in part, by an intent to discriminate against women.

The defendants have countered Austin's third contention by arguing that at the time the Virginia statute was enacted, Virginia's General Assembly was faced with an Unemployment Trust Fund that was at a dangerously low level. Combined with the legitimate economic rationales for the statute mentioned above, the defendants have insisted that Austin's third attack on the lower court's decision must fail as well.

■ Initially, Austin's argument that the government must show a substantial relationship to an important state interest is misplaced and embodies an incorrect standard. The test advocated by Austin is reserved for cases involving a gender-based classification. *Feeney*, 442 U.S. at 272–73, 99 S.Ct. at 2292–93. Here, because we have determined that the classification at issue is not gender-based, we apply the rational relationship test. *See Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–63, 25 L.Ed.2d 491 (1970). As aforementioned, the statute has a legitimate, rational economic purpose.[3]

Finally, turning to Austin's argument that the district court's decision was infirm in its examination of legislative history, it is clear that the court conducted an in-depth analysis of the legislative history behind the enactment of the Virginia statute. In addition, the court largely accepted Austin's own characterization of the competing economic interests at work that provided the impetus for the statute. Considering all of the above, the district court simply concluded that Austin had failed to demonstrate purposeful (invidious) discrimination.

Even viewing Austin's case in the light most favorable to her position, Austin has failed to show that a gender-based discriminatory purpose in any way shaped the Virginia legislation at issue here. Moreover, even if we were to accept Austin's argument that the defendants knew that the Virginia statute would largely impact women, we are brought nowhere closer to locating constitutional infirmity. For, as the Supreme Court has clearly stated,

> "discriminatory purpose" ... implies more than intent as volition or intent as awareness of consequences. It implies

---

**2.** *See Feeney,* 442 U.S. at 280 n. 27, 99 S.Ct. at 2296 n. 27.

**3.** While it may be that the statute is an unfortunate policy choice, it is for the legislature, not the courts, to determine policy. As the Supreme Court has noted, "the calculus of effects,

the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." *Feeney,* 442 U.S. at 272, 99 S.Ct. at 2292 (citing *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).

that the decisionmaker, in this case a state legislature, selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296 (citing *United Jewish Organizations v. Carey,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977)) (other citations omitted). Austin has simply failed to make a showing of discriminatory purpose.

Consequently, we affirm the district court's decision in the case at bar. Virginia Code § 60.2–618 is a facially neutral statute that has a legitimate economic purpose. Moreover, Austin has failed to demonstrate any covert discrimination lurking beneath the surface of the statute. In light of *Feeney,* Austin's disparate impact argument, standing alone, is insufficient to demonstrate purposeful discrimination.

The decision is

AFFIRMED.