Janice BAILEY, Renee Villeneuve, Michael Moon, Tom R. Cox, Wendy J. Foxworth, Kathryn Janes, Mary Ann Hubbard, and Kasey Smith, Appellants,

v.

THE CITY OF AUSTIN, Appellee.

No. 03–97–00789–CV.

Court of Appeals of Texas, Austin.

July 16, 1998.

Rehearing Overruled Aug. 13, 1998.

Mark L. Kincaid, Austin, for Appellant.

Andrew F. Martin, City Attorney, Frederick A. Hawkins, Assistant City Attorney, David Allan Smith, Assistant City Attorney, Austin, for Appellee.

Before POWERS, KIDD, and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The main issue presented is whether Proposition 22, which amended the City of Austin's city charter by referendum, violates the equal protection provisions of the Texas Constitution. Appellants Janice Bailey, Renee Villeneuve, Michael Moon, Tom Cox, Wendy Foxworth, Kathryn Janes, Mary Ann Hubbard, and Kasey Smith sued the City of Austin complaining that Proposition 22 violates the Texas Constitution and the Texas Insurance Code, and that the City was also liable under breach of contract and promissory estoppel. The district court granted summary judgment in favor of the City after both parties filed motions for summary judgment. Appellants bring four issues on appeal. We will affirm in part and reverse and remand in part the district court's summary judgment.

## BACKGROUND

At all relevant times, Bailey, Moon, Janes, and Hubbard were City employees, and Villeneuve, Cox, Foxworth, and Smith were their respective partners. Appellee is a municipality incorporated in the state of Texas. The City has traditionally offered life, health, and dental insurance plans to its employees, their spouses, and their dependent children as part of the benefits package it provides its employees. At issue is the health insurance: the City offers two HMOs and one self-funded plan ("City plan"). The City generally oversees and negotiates the HMO insurance plans for its employees; it administers and manages the City plan, much like a private insurance company. The City disseminates information and collects premiums which it deducts from the employee's paychecks for all three plans. The City pays an employee's premiums if she elects to be covered under the City plan; it pays only a portion if the employee is covered under either HMO. If an employee elects to extend health coverage to an eligible dependent, the City pays a portion of the dependent's premium due under any of the offered plans.

Sometime in 1993, the City Council of the City was urged to extend insurance benefits to "domestic partners"[1] of City employees. The Human Resources Department gathered extensive information by contacting private employers and other cities regarding the costs and advantages of domestic partner benefits. Experts concluded that insurance rates would not be affected because there was no evidence that domestic partners constitute a "high-risk, high-cost group." The City gave several reasons for its decision to offer domestic partners benefits: (1) to implement policies and programs that are fair and equitable; (2) to maintain and recruit

---

1. "Domestic partner" was defined as someone who lives in the same household, shares the common resources of life in a close, personal, and intimate relationship with an employee, and would not be prevented from marrying the employee because of age, consanguinity, or prior undissolved marriage to another. In this context and as the term is commonly used, domestic partners are unmarried.

quality employees; and (3) to provide adequate medical coverage for employee dependents. On September 2, 1993, the City Council approved a change to the City's personnel policy that defined eligible dependent to include "domestic partner," thereby extending health benefits to all domestic partners and their children. The City notified its employees that domestic partner benefits would be available. During the limited open-enrollment period, an employee could enroll her domestic partner under any of the health insurance plans. To qualify, the employee and partner had to file with the Travis County Clerk's office a formal Declaration of Domestic Partnership which requires the parties to attest to an emotionally committed relationship of mutual caring, mutual residency, joint responsibility for basic living expenses, and that no other partnership or marriage had existed in the last six months.

Although the projected cost was originally over $500,000 for the 1993–94 fiscal year, the actual cost at the end of the enrollment period was just over $100,000 for the fiscal year.[2] When coverage began in January 1994, one hundred employees had signed up to receive domestic partner benefits; seventy-one of those employees enrolled an opposite-sex partner and twenty-nine enrolled a same-sex partner. Among its enrollees were employee Moon and his same-sex partner Cox, and employee Bailey and her same-sex partner Villeneuve. Employee Janes and her same-sex partner Foxworth were waiting for six months to elapse with the intention to file a declaration of domestic partnership. Employee Hubbard and her same-sex partner Smith were denied domestic partner benefits after the passage of Proposition 22.

Proposition 22 passed by a majority vote on May 7, 1994. It amends Austin's city charter to provide:

> City employee benefits shall be as provided in the approved "Personnel Policies"; provided such City employee benefits shall in no case be extended to any persons other than an employee's parents, spouse, children (including step-children, children for whom a court ordered guardianship or conservatorship has been assigned, qualified children placed pending adoption, and eligible grandchildren), sisters, brothers, grandparents, and the parents and grandparents of an employee's spouse; except as otherwise provided in state or federal law and *the term spouse as defined in the "Personnel Policies" shall mean the husband or wife of the employee.*

(Emphasis added). On May 17, 1994, the City informed its employees that benefits for domestic partners and their children were terminated effective May 9. Appellants filed suit in district court alleging that the proposition was unconstitutional and in violation of the Texas Insurance Code,[3] and that the City was liable to pay domestic partner benefits under a contract theory or in the alternative, under promissory estoppel. Both parties filed motions for summary judgment. The district court denied appellants' motion and granted appellee's motion on unstated grounds. Appellants come now appealing the district court's judgment.

## STANDING

▇▇▇ The City contends that several of the appellants have no standing. To have standing the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When the trial court does not order a dismissal for want of jurisdiction, we consider standing for the first time on appeal. *Id.* Therefore, an appellate court should construe the petition in favor of the party, and if necessary review the entire record to determine if any evidence supports standing. *Id.* The general test for standing requires (1) a real controversy between the parties (2) that will be determined by the relief sought. *Id.* In other words, a plaintiff must assert some restriction of its own rights, not someone else's.

---

2. This amount was based on the actual number of enrollees.

3. *See* Tex. Const. art. I, §§ 3, 3a, 16; Act of May 23, 1989, 71st Leg. R.S., ch. 966, § 1, 1989 Tex. Gen. Laws 4043, 4044 (Tex. Ins.Code § 4(7)(b) since repealed by Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2998).

*See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 518 (Tex.1995).

▮ In their second amended petition, appellants allege as fact that: (1) Bailey, Moon, Hubbard, and Janes are or were City employees; (2) Villeneuve, Cox, Smith, and Foxworth are their respective domestic partners; (3) Bailey and Moon applied for and received benefits that were terminated; (4) Hubbard applied for benefits that were refused to her; (5) Janes intended to apply for benefits that were subsequently terminated; and (6) all appellants sought declaratory judgment and injunctive relief declaring Proposition 22 and the City's conduct unconstitutional and in violation of certain statutes, and actual damages suffered due to the termination of benefits. Although the City claims that Moon and Janes never applied for or were eligible for benefits, the facts alleged as to Moon reveal otherwise. Additionally, Moon responded in an interrogatory that he applied for these benefits and that coverage was in effect until revoked by Proposition 22. As to Janes, the facts alleged are that she *intended* to apply but was waiting the required six months to qualify for domestic partnership status. Her responses to certain admissions reveal that (1) she accepted employment with the City relying on the promised domestic partner coverage, and (2) she left employment with the City *because of* the termination of partner benefits. Construing the record in favor of standing, we conclude that all appellants have asserted a restriction of their own rights and have demonstrated that between all appellants and the City a real controversy exists that can be determined by appellants' request for declaratory judgment, injunction, and damages.

## STANDARD OF REVIEW

▮ Generally upon review of a summary judgment, a court determines whether the movant has shown that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court should determine all questions presented. *See Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). In the instant case, both parties moved for summary judgment on three of appellants' five causes of action.[4] Thus, both agree that a summary judgment appropriately decides: (1) whether Proposition 22 violates the equal protection clause of the Texas Constitution; (2) whether Proposition 22 violates the impairment of contracts clause of the Texas Constitution; and (3) whether Proposition 22 and the City's withdrawal of domestic partner benefits violates the unfair discrimination provision of the Texas Insurance Code. When reviewing a summary judgment granted on general or unstated grounds, we consider whether any theories set forth in the motion will support the summary judgment. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex. 1993). Appellants also brought a breach of contract claim and a promissory estoppel claim. The City moved for summary judgment on both claims. Unless an exception exists not applicable here, a defendant seeking summary judgment based on a plaintiff's inability to prove the case must conclusively disprove at least one element of the plaintiff's cause of action. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991).

## DISCUSSION

### Equal Protection

▮ Appellants assert that Proposition 22 violates the equal protection guarantees of the Texas Constitution. Article I, section 3 of the Texas Constitution provides:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive public emoluments, or privileges, but in consideration of public services.

Tex. Const. art. I, § 3. Article I, section 3a provides:

> Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative.

4. Appellants also originally brought a DTPA claim which is not at issue in this appeal.

Tex. Const. art. I, § 3a (1972). The Texas Constitution must not provide less protection than that mandated by the federal constitution; it may provide additional rights. *Davenport v. Garcia*, 834 S.W.2d 4, 15 (Tex. 1992). Equal protection decisions recognize that a state cannot function without classifying its citizens for various purposes and treating some differently than others. *See Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex.1981). The equal protection clause requires only that those who are similarly situated be treated equally. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex.1985). We review a law passed directly by voters with the same scrutiny we review a law passed by the legislature. *See Cleburne*, 473 U.S. at 448, 105 S.Ct. 3249.

We must first decide exactly what classification is being challenged. Appellants all have same-sex domestic partners; they assert that Proposition 22 discriminates against them on the basis of their sexual preference, against homosexuals as a class. However, Proposition 22 facially excludes the class of *all domestic partners*, heterosexual and homosexual, from the definition of a dependent eligible for employee benefits. The proposition itself does not facially discriminate against homosexuals as a class.

"The proper classification for purposes of equal protection analysis is not an exact science, but scouting must begin with the statutory classification itself. Only when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the basis of the impact of those classes." *Califano v. Boles*, 443 U.S. 282, 293–94, 99 S.Ct. 2767, 61 L.Ed.2d 541 (1979) (incidental and speculative categorization of illegitimate children not sufficient to treat denial of insurance benefits to unwed mothers as discrimination against illegitimate children; classification for analysis was statutory class

of unwed mothers); *see Schweiker v. Wilson*, 450 U.S. 221, 231, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (incidentally denying benefit to mentally ill insufficient to consider statute as classifying on basis of mental health as alleged); *Orange Lake Assocs. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir.1994) (substantial disproportionate impact on one of several groups required). The statistical evidence reveals that out of the one hundred employees who signed up for domestic partner benefits, seventy-one had opposite-sex partners and twenty-nine had same-sex partners; thus, homosexual couples were not the only group affected by the passage of Proposition 22. *See Schweiker*, 450 U.S. at 230, 101 S.Ct. 1074 (taking into account evidence that in addition to alleged class other groups were equally deprived). Appellants claim that the proposition disproportionately impacts the class of homosexuals because they cannot enter into a legal marriage. *See* Tex. Fam. Code Ann. § 2.001(b) (West 1998) ("A license may not be issued for the marriage of persons of the same sex."). When a valid Texas statute denies a discrete group of citizens the right to legally marry, we cannot but conclude that homosexual employees are disproportionately burdened by a law that makes benefits contingent upon marriage. In other words, under Proposition 22, *all* homosexual employees with domestic partners are deprived of benefits for their partners while only a *portion* of heterosexual employees with domestic partners, those who *choose* not to marry, are similarly deprived of benefits.[5]

Evidence of a disproportionate burden alone, however, is not enough to warrant analysis under the alleged classification rather than the statutory classification. *See Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (disproportionate impact not irrelevant but neither is it "sole touchstone"). Evidence of an *intent* to classify on the basis of the alleged class is also necessary. *See Schweiker*, 450 U.S. at 233–34, 101 S.Ct. 1074 (without evidence of congressional intent to classify on basis of mental health, court

---

5. Appellants argue that heterosexual couples can *always* marry. We find no evidence that these heterosexual employees who elected domestic partner benefits would have or could have married their partners. There may have been personal (religious or other) obstacles or even contractual obligations preventing them from marriage.

would review on basis of statutory classification); *Boles*, 443 U.S. at 294, 99 S.Ct. 2767 (reviewing claim under statutory classification without further evidence of discriminatory purpose); *Orange Lake Assocs.*, 21 F.3d at 1225 (evidence of legislative motive to classify on the basis of minority race necessary to apply strict scrutiny to facially neutral statute); *Austin v. Berryman*, 955 F.2d 223, 228 (4th Cir.1992) (evidence that neutral statute was motivated by gender-based discrimination necessary to apply intermediate scrutiny) (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

Appellants point to several newspaper articles in the record as evidence of intent to discriminate against homosexuals. We have thoroughly scrutinized the record. The summary-judgment evidence reveals little about the intent underlying the passage of Proposition 22. The proposition was favored by over 50,000 voters. There is no evidence in the record nor could there be evidence demonstrating the intent of 50,000 individual voters. The record contains several newspaper articles regarding domestic partner benefits, Proposition 22, and the subsequent lawsuit by appellants. From these articles, we discern that (1) domestic partner benefits were encouraged by local supporters as "much more than a gay and lesbian issue, because many domestic partners come from heterosexual relationships" (Dianne Hardy–Garcia, Austin Lesbian/Gay Political Caucus co-chairwoman); (2) a group called Concerned Texans sponsored the petition to amend the City Charter with Proposition 22; their campaign manager stated, "we think a lot of people are not happy that the city is using their tax money to fund domestic partners' insurance ... a lot of people think it is inherently wrong from a moral perspective"; (3) the City Council had no choice about placing the proposition on the ballot; and (4) Concerned Texans encouraged other groups to oppose a tax abatement for an Apple computer facility because the company offers benefits to "unmarried partners of employees." While domestic partner benefits may have been supported by gay and lesbian groups, they benefitted unmarried heterosexual couples as well. Although some proponents of Proposition 22 were undoubtedly motivated by animus against homosexuals, there is evidence that others were offended by the City's extending benefits to unwed heterosexual partners as well. There is not sufficient evidence to conclude that the underlying intent behind the passage of Proposition 22 was to discriminate against the narrow class of homosexuals as opposed to the broader class of all unmarried partners. Accordingly, we hold the classification at issue consists of all unmarried domestic partners.

■ The general rule is that when the classification created by the governmental scheme neither infringes on fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See Sullivan*, 616 S.W.2d at 172 (citing *Parham v. Hughes*, 441 U.S. 347, 350–53, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979)). Proposition 22 classifies those who may and those who may not be considered eligible dependents for purposes of health insurance. The United States Supreme Court has determined that the right to welfare benefits is not a fundamental right. *See, e.g., Boles*, 443 U.S. 282, 99 S.Ct. 2767, 61 L.Ed.2d 541; *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Appellants cite no cases nor have we found any suggesting that the right to health insurance benefits is a fundamental right. Additionally, neither domestic partners nor unmarried partners constitutes a suspect class requiring strict scrutiny. *See James v. State*, 772 S.W.2d 84, 92 (Tex.Crim. App.), *remanded for consideration on other grounds*, 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989) (citing *Califano v. Jobst*, 434 U.S. 47, 53–54, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (marital status is not suspect classification)).

■ Thus, the pertinent inquiry is whether excluding unmarried domestic partners from the category of dependents eligible for employee benefits advances legitimate legislative goals in a rational fashion. *See Schweiker*, 450 U.S. at 234, 101 S.Ct. 1074. Although this rational-basis standard is "not a toothless one," *Mathews v. Lucas*, 427 U.S.

495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the reviewing court may not substitute its notions of good public policy for those of the legislature or the public. Proposition 22 will pass constitutional muster unless the "varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [voters'] actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Legislative classifications must be upheld "if any state of facts can be conceived that will sustain" them. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *see, e.g., Vance,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171; *Lens Express, Inc. v. Ewald,* 907 S.W.2d 64, 69 (Tex.App.—Austin 1995, no writ). It is constitutionally irrelevant whether the plausible reason for the governmental action in fact underlies the legislation; the Supreme Court has never insisted that a legislative body articulate its reasons for enacting a statute. *See U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). This is particularly true where the legislature must necessarily engage in a process of line-drawing. *See Garcia,* 893 S.W.2d at 524. Even less can the populace at large be expected to articulate its rationale for a popular vote.

▓ The City suggests that saving on the cost of administering a benefits package is a legitimate governmental interest. It asserted in oral argument that the City would save $100,000 by excluding domestic partners from insurance benefits. We recognize the City has a valid interest in preserving the fiscal integrity of its programs. *See Shapiro*

*v. Thompson,* 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program such as health insurance. But "a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools." *Id.* (party required to do more than show that denying welfare benefits to new residents saves money). Without any other goal, the City could legitimately deny benefits to employees with dark hair because it always saves money to deny benefits to any group. Cutting costs may justify drawing lines, but it does not justify *where* lines are drawn. Equal protection demands that even limited financial resources be rationally allocated so that individuals in like circumstances are treated with parity. Furthermore, Proposition 22 *expands* the class of eligible dependents and allows the City, if it so chooses, to partially cover the cost of a premium for an employee's parents, grandparents, siblings, spouse, spouse's parents and grandparents, and every conceivable type of legal relationship to a child. Proposition 22 in no way saves the City money by increasing the class of permissible dependents the City may choose to fund. In order to find Proposition 22 constitutional, we must ascertain another legitimate state interest.[6]

▓ Proposition 22 limits to whom the City may extend benefits: an employee, an employee's spouse, parents, grandparents, children (of various legal or future legal relationships), sisters, brothers, and parents

---

6. The Supreme Court has been exact in articulating a legitimate state interest distinct from preserving fiscal integrity in holding constitutional a statute that favors some while disfavoring others. *See, e.g., Califano v. Boles,* 443 U.S. 282, 289, 99 S.Ct. 2767, 61 L.Ed.2d 541 (1979) (regarding mother's insurance that did not provide for illegitimate children and their mothers; "Congress could have reasonably concluded that a woman who has never been married to the wage earner is far less likely to be dependent upon the wage earner at the time of death"); *Califano v. Jobst,* 434 U.S. 47, 53–54, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (regarding statute that cut off social security benefits to disabled adult who married but

not to disabled adult who married another disabled adult receiving benefits; "the [ ] amendment reflects a legislative judgment that a marriage between two persons receiving benefits will not normally provide either spouse with protection against economic hardship that would be occasioned by the termination of benefits").

In both *Boles* and *Jobst,* the Court analyzed the equal protection claim under the assumption that governmental entities work with limited resources which preclude them from providing unlimited benefits. The Court however closely examined *other* state interests that would reasonably support *who* received those benefits.

and grandparents of an employee's spouse. By defining spouse as husband or wife, it excludes all domestic partners. Thus, in the language of the proposition, a legitimate governmental interest is discernable: recognizing and favoring legally cognizable relationships such as marriage. Under both the federal and state constitution, the freedom to marry is recognized as a fundamental right. *See Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Justice Marshall reaffirmed the importance of this right in *Zablocki v. Redhail:* "[s]urely, a decision to marry and raise the child in a traditional family setting must receive equivalent protection [to the right to seek an abortion]." 434 U.S. 374, 386, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Were we considering the government's interest in free speech, we would not hesitate to conclude the government has a legitimate interest in recognizing and favoring such a fundamental right. Similarly, if an individual's right to marriage is of fundamental importance then the state has a legitimate interest in recognizing the marriage relationship. Such an interest must extend by nature to other family relationships created by law such as adopted children, court-appointed guardian, and conservator. The law generally recognizes family relationships created by consanguinity. *See, e.g.,* Tex. Prob.Code Ann. § 38 (West 1980). In Texas, the Family Code recognizes familial relationships by granting rights to and imposing obligations on spouses, parents, and grandparents. *See* Tex. Fam.Code Ann. §§ 4.02, 4.031, 41.001–.003, 151.003, 153.431–.434 (West 1993 & Supp. 1998). We hold the government has a legitimate interest in recognizing and favoring legally cognizable family relationships including the legal relationship of marriage.[7] *See Roe II v. Butterworth*, 958 F.Supp. 1569, 1582 (S.D.Fla.1997), *aff'd*, 129 F.3d 1221 (11th Cir.1997), *cert. denied*, 1998 USLX (1998) (protecting institutions of marriage and family is legitimate government purpose); *see also Hodgson v. Minnesota*, 497 U.S. 417, 446, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (state has legitimate interest in creation and dissolution of marriage contract); *Trimble v. Gordon*, 430 U.S. 762, 769, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) ("no one disputes the appropriateness of the state's concern with the family unit"); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996) (Ohio has express public policy favoring marriage). Because Proposition 22 allows the City to provide benefits to an employee's legal spouse and other persons in a cognizable family relationship with an employee, it advances the government's legitimate interest in recognizing and favoring such relationships. The classifications drawn by Proposition 22 are substantially related to a legitimate goal and not so attenuated as to render the distinctions arbitrary or irrational. *See Cleburne*, 473 U.S. at 446, 105 S.Ct. 3249.

This Court properly exercises only a limited review power over the public when it engages in the democratic process and makes choices among alternative solutions to social and economic problems. In *Schweiker*, Justice Blackmun reiterated the importance of allowing the democratic process to establish public policy:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequity."

This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. As long as the classificatory scheme chosen by Congress rationally advances a reasonable

---

7. While we hold the recognition of a legal marriage is a legitimate state interest, we do not comment on whether the prohibition on same-sex marriages is a fair or even a constitutional policy. Appellants do not challenge its constitutionality here and do not suggest that the institution of marriage itself (without reference to gender) is a denial of equal protection.

and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.

*Schweiker,* 450 U.S. at 234, 101 S.Ct. 1074 (Citations omitted). Thus, we may disagree with the wisdom of the policy or the method of allocation, but we may not overturn a law unless its classification is so irrelevant to a stated purpose that the distinctions drawn are clearly arbitrary. Under such a limited review, we hold that Proposition 22 is constitutional and not a violation of the equal protection clauses of the Texas Constitution.

Appellants argue that *Romer v. Evans,* a recent United States Supreme Court decision, compels a decision that Proposition 22 is unconstitutional. 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). We disagree. The amendment in *Romer* targeted a specific group—homosexuals—and prohibited all legislative, executive, or judicial action at any level of state or local government from protecting that class. The Court could find no rational relation between the target class and a legitimate state purpose because the amendment was "at once too narrow and too broad" by identifying persons by a single trait and then denying them protection across the board. *Id.* 116 S.Ct. at 1627. The only purpose the amendment had was "a bare desire to harm a politically unpopular group" which is not a legitimate governmental purpose and therefore is forbidden by the constitution. *Id.* 116 S.Ct. at 1628. The Colorado amendment was held unconstitutional because it denied a discrete group the ability to participate in the political process. *See id.* 116 S.Ct. at 1626–28.

Similar circumstances do not exist here. We have already held there is no evidence of an intent to discriminate, invidious or not, against the class of homosexuals with regard to the passage of Proposition 22. The proposition does not target a group identifiable by a single trait, such as sexual orientation, but rather targets all who choose domestic partners without the benefit of marriage. Moreover, Proposition 22 deals only with employee benefits, not with access to political and judicial redress. It classifies and excludes persons on the basis of marital status and other legal relationships. Proposition 22 does not deny domestic partners the ability to seek future political redress. It does not deny domestic partners—heterosexuals or homosexuals—the ability to organize and reinstate domestic partner health benefits through the democratic process of initiating a future petition to rescind Proposition 22. If a suspect class or a fundamental right is not implicated we ask only, as did the *Romer* court, whether the statute is rationally related to a legitimate purpose. The *Romer* court found the Colorado amendment advanced no legitimate purpose. We must acknowledge, however, that Proposition 22 furthers the City's interest in recognizing legal relationships including marriage; therefore, we hold it is rationally related to a legitimate purpose.

Appellants also point to the jurisprudence of two other states to support their equal protection claim. In *Tumeo v. University of Alaska,* the Alaska court found that a university's denial of health insurance coverage to its employees' domestic partners violated a state statute that forbids discrimination on the basis of marital status. Case No. 4FA–94–43, 4, 1995 WL 238359 (Alaska Super.Ct.1995). Texas has no statute that forbids discrimination on the basis of marital status. In a Vermont decision, the Labor Relations Board of that state found that a university's refusal to extend health benefits to its employees' same-sex partners violated the university's own binding rule prohibiting discrimination on the basis of sexual orientation. *Grievance of B.M. et. al.,* Docket No. 92–32, 1, 6 (Vt. Labor Relations Bd.1993). Texas, by contrast, has no statute forbidding discrimination on the basis of sexual orientation. Neither of the cited opinions implicates the equal protection clause or aids the appellants' constitutional claims. We hold Proposition 22 does not violate the equal protection clauses of the Texas Constitution and overrule appellants' first issue.

### Impairment of Contract

Appellants claim Proposition 22 unconstitutionally impairs the City's contractual obligations. Article I, section 16 of the Texas Constitution prohibits both laws impairing the obligations of contracts and retro-

active laws. Tex. Const. art. I, § 16. A statute is not retroactive unless it can be shown that vested rights acquired under the existing law are taken away or impaired. *International Sec. Life Ins. Co. v. Maas,* 458 S.W.2d 484, 490 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.) (citing *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898 (1955)). We find that neither a contract nor a vested right existed which could have been impaired. A vested right under the Texas Constitution has been defined as a well-founded claim that "means nothing more nor less than a claim recognized and secured by law." *Texas Water Rights Comm'n v. Wright,* 464 S.W.2d 642, 648 (Tex.1971) (quoting *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887)).

The City Personnel Policies handbook states in its introduction, "these policies are not a legal contract." Furthermore, the City Benefits Guide which details the several benefits available to employees gives the City the right to "change, amend, or modify the benefit plans and contributions at any time." The Texarkana Court of Appeals has held that an employee policy handbook or manual that sets forth benefits and policies does not constitute a binding contract unless the manual uses language clearly indicating an intent to do so. *Gamble v. Gregg County,* 932 S.W.2d 253, 255 (Tex.App.—Texarkana 1996, no writ). The employee handbook at issue here expressly negates any intent to create a binding contract.

Nor do appellants have a vested right in the benefits at issue; this Court has held that an employee manual expressly giving the City discretion to terminate its employees does not create a protected interest in continued employment. *See Byars v. City of Austin,* 910 S.W.2d 520, 524 (Tex.App.—Austin 1995, writ denied).[8] Likewise, we hold that a handbook which expressly gives the City the right to amend or eliminate the health benefits offered does not create a protected interest in those benefits; therefore, appellants do not have a claim recognized and secured by law. Because the handbook did not create a contract or a vested right, we hold the City has not im-

paired the obligation of contracts under the Texas Constitution. We overrule issue number two.

Appellants also sued the City under a breach of contract theory. Because we hold no contract existed, summary judgment in favor of the City properly resolves this claim. We overrule part B of issue four.

*Unfair Discrimination*

■ Appellants claim that Proposition 22 violates the anti-discrimination provision of the Texas Insurance Code. At the time the benefits were offered and withdrawn, article 21.21 prohibited unfair discrimination defined as:

> Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract or in any other manner whatever.

Act of May 23, 1989, 71st Leg., R.S., ch. 966, § 1, 1989 Tex. Gen. Laws 4043, 4044 (Tex. Ins.Code § 4(7)(b) since repealed by Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2998). The City asserts it is not an entity engaged in the business of insurance even though it offers its employees a self-funded health insurance plan. Without deciding whether the City is engaged in the business of insurance under the Insurance Code, we hold the relevant provision is not applicable to these circumstances.

Section 7(b) specifically applies to premiums, policy fees, and rates; it does not address *who* or *what* the Code requires insurers to cover. *Id.* Furthermore, even if the phrase "or in any other manner whatever" could be construed to apply to defining eligible dependents, the Code only prohibits discrimination between individuals of the *same class.* We have already held that in the present case the class excluded from health insurance consists of *all* domestic partners. The Insurance Code does not require insur-

---

**8.** *The very same City Personnel Policies hand-* book was at issue.

ers to provide coverage for every conceivable class and it permits them to distinguish between different classes for purposes of dependent eligibility requirements. We hold the discrimination provision of the Insurance Code does not apply to the instant case. We overrule appellants' issue number three.

### Promissory Estoppel

Lastly, appellants contend the district court erred in granting the City's motion for summary judgment with respect to their promissory estoppel claim. Although promissory estoppel is normally a defensive theory, it may be asserted by a plaintiff as an affirmative ground for relief. *El Paso Healthcare Sys. Ltd. v. Piping Rock Corp.,* 939 S.W.2d 695, 698 (Tex.App.—El Paso 1997, writ denied); *Donaldson v. Lake Vista Community Improvement Ass'n,* 718 S.W.2d 815, 818 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

 We will first detail the procedural history to provide a clear background upon which we make our analysis. Appellants' original petition alleged a promissory estoppel cause of action. In response, appellee's motion for summary judgment addressed promissory estoppel, contending that appellants do not have standing and that the City has governmental immunity. Appellants' cross-motion for summary judgment also appeared to address the promissory estoppel claim; subsequent supplemental motions for summary judgment by both parties continued to raise the promissory estoppel issue. Appellants contend the City is estopped as a matter of law, or in the alternative that the claim be severed to proceed to trial. Appellants' second and final amended petition failed to list promissory estoppel as a cause of action and to address the issue.[9] It seems the absence was purely a literal mistake, rather than a failure to state a cause of action or an intentional withdrawal of that cause of action. The record reveals that appellants continued to raise promissory estoppel in supplemental summary-judgment briefs to the trial court and *both* parties address estoppel on appeal to this Court. Appellee never sought a "no cause of action"

summary judgment on promissory estoppel or objected by special exception, and it does not now contend that it is entitled to summary judgment for appellants' failure to state a cause of action. We will therefore treat appellants' issue on appeal as if they had correctly pleaded it in the court below. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991) (holding that unplead affirmative defense may serve as basis for summary judgment when raised in summary-judgment motion and opposing party does not object because unplead claims or defenses tried by express or implied consent of parties are treated as if they had been raised in pleadings); *Lewis v. Skippy's Mistake Bar,* 944 S.W.2d 1, 5 (Tex.App.—Fort Worth 1996, no writ) (generally improper to grant summary judgment on deficient pleading's failure to state cause of action when deficiency can be attacked through special exception; defects in pleadings must appear to be incurable by any amendment of pleadings).

 The City claims appellants are precluded from suing the City because it is protected from liability by governmental immunity. Municipal corporations, like the City of Austin, are traditionally afforded governmental immunity for performance of governmental functions. *Gates v. City of Dallas,* 704 S.W.2d 737, 738 (Tex.1986); *see Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 594 (Tex.App.—Austin 1991, writ denied) (governmental unit not subject to estoppel when exercising governmental powers). On the other hand, when a municipal corporation performs a proprietary function it is subject to the same duties and liabilities as those incurred by private persons and corporations. *Gates,* 704 S.W.2d at 738; *Dillard,* 806 S.W.2d at 594–95 (estoppel may apply to municipality that exercises proprietary function). Governmental functions are those public acts which the municipality performs "as the agent of the State in furtherance of general law for the interest of the public at large." *Gates,* 704 S.W.2d at 738 (quoting *City of Crystal City v. Crystal City Country Club,* 486 S.W.2d 887, 889 (Tex.Civ.App.—

---

9. An amended petition supercedes any previous petitions. *See* Tex.R. Civ. P. 65; *Evans v. Hoag,*

711 S.W.2d 744, 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Beaumont 1972, writ ref'd n.r.e.)). A proprietary function is one performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality rather than for use by the general public. *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex.1987) (citing *Gates*, 704 S.W.2d at 739).

In the present case, the City offers three health plans to its employees: a self-insured plan and two HMO plans administered by private insurers. The City solicits requests for proposals and invitations for bids for procuring insurance coverage. It manages and administers its own plan and oversees the HMO plans. The City also deducts premiums from its employees' paychecks for all three plans. The City does not contend that it performs these acts for the general public, nor can it be reasonably argued that such acts are in "furtherance of general law for the interest of the public at large." *City of Crystal City*, 486 S.W.2d at 889. We conclude that the City's function of offering, administering, and overseeing health care plans for *its own employees* are proprietary functions. Such activities are not integral to its function as an arm of the state. *See City of Houston v. Southwest Concrete Constr., Inc.*, 835 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1992, writ denied). This holding comports with Texas law. *See Gates*, 704 S.W.2d at 739 (entering into insurance contract with employee for self-insured plan was proprietary function); *see also Southwest Concrete Constr., Inc.*, 835 S.W.2d at 731 (administration of rehabilitation loan program); *Josephine Abercrombie Interests, Inc. v. City of Houston*, 830 S.W.2d 305, 309 (Tex.App.—Corpus Christi 1992, writ denied) (administration of block grant loan program to private developers). Strictly construing the doctrine of municipal immunity against the municipality, *see City of Gladewater*, 727 S.W.2d at 519, we hold the City does not have governmental immunity under these circumstances.

**10.** We do not interpret this challenge as a "no-evidence motion" for summary judgment. Rule 166a(i) was not in effect when appellees filed their motions. *See* Order of April 16, 1997, 60 Tex. B.J. 534 (amending Tex.R. Civ. P. 166a, eff.

■ Promissory estoppel allows a cause of action to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise. *See Cherokee Communications, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 317 (Tex.App.—Eastland 1994, writ denied) (citing *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex.1965)). A promise may be binding if the promisor should reasonably expect that the promise will induce action or forbearance, the promisee substantially relies on the promise to his detriment, and enforcement of the promise is necessary to avoid an injustice. *See El Paso Healthcare v. Piping Rock Corp.*, 939 S.W.2d 695, 698–99 (Tex.App.—El Paso 1997, writ denied) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972)); *Cherokee Communications, Inc.*, 893 S.W.2d at 317. "One, who by speech or conduct induces another to act in a particular manner should not be permitted to adopt an inconsistent position, attitude, or course of conduct which causes loss or injury to another." *Donaldson v. Lake Community Improvement Ass'n*, 718 S.W.2d 815, 818 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). Recoverable damages are only the amount necessary to restore the injured party to the position the party would have been in absent action in reliance on the promise. *Id.*

■ The City claims there was no evidence of reliance, a promise made, or damages incurred.[10] Summary judgment is proper for a defendant who establishes, as a matter of law, there are no issues of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). In reviewing the granting of a summary-judgment motion, we assume all evidence favorable to the nonmovant is true. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). We indulge every reasonable inference in favor of the nonmovant and resolve any reasonable doubt in its favor. *See Science Spectrum, Inc.*, 941 S.W.2d at 911.

Sept. 1, 1997); *see also Pena v. Van*, 960 S.W.2d 101, 105 (Tex.App.—Houston [1st Dist.] 1997, no pet.) (if defendant files motion for summary judgment after September 1, 1997, new rule applies).

In arguing there was no evidence of reliance, the City points us to certain interrogatories and admissions. Specifically, it claims that all appellants answered "none" to the question: "Please state all benefits you or your domestic partner applied for *but were denied* prior to the election results regarding Proposition 22." (Emphasis added). We find, however, that the answer "none" encompasses the whole question rather than just the first half of the inquiry as the City attempts to imply; in other words, "none" merely indicates there were no benefits both applied for *and* denied prior to Proposition 22. Additionally, there is some summary-judgment evidence that (1) both Bailey and Moon applied for benefits and received coverage for their domestic partners until Proposition 22 passed; (2) Janes expected domestic partner benefits as part of her employment with the City because she had been informed of those benefits; and (3) Janes quit because of the denial of such benefits. Finally, the summary-judgment evidence shows that health benefits were available to all City employees' domestic partners for some period and that they were terminated *retroactively*. The Personnel Policies handbook defines eligible dependent to include domestic partner; the handbook also states, "[t]hese policies may be changed by the City Council upon the recommendation of the City Manager, *but no such changes will divest any employee of rights accrued under these policies* at the time of such change." (Emphasis added). It would not be unreasonable to rely on such a statement and assume that domestic partner coverage would continue at least until the insurance policy expired regardless of any changes. The evidence raises an issue of material fact as to whether there was detrimental reliance. *See Hall v. Harris County Water Control & Improvement Dist. No. 50,* 683 S.W.2d 863, 868 (Tex.App.—Houston [14th Dist.] 1985, no writ) (reasonable reliance is generally question of fact). The record also reveals that the City made it known to its employees that domestic partner health benefits would be available. Based on the summary-judgment evidence, we cannot conclude that appellee conclusively disproved any essential element of appellants'

claim of promissory estoppel. We sustain part C of appellants' issue number four.

## CONCLUSION

Because the City did not violate the Texas Constitution or the Texas Insurance Code, we affirm the summary judgment with respect to those causes of action. We further affirm the summary judgment on the breach of contract claim as no valid contract existed. However, the City did not conclusively disprove any element of appellants' promissory estoppel claim; we therefore reverse and remand that portion of the judgment for further proceedings.