The STATE of Texas, Appellant,

v.

The CITY OF GALVESTON, Appellee.

No. 01–03–00557–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 10, 2004.

Greg Abbott, Rance L. Craft, Assistant Solicitor General, Austin, TX, for Appellant.

Ramon G. Viada, Abrams, Scott & Bickley, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, the State of Texas, appeals from a final order granting the plea to the jurisdiction of appellee, the City of Galveston ("the City"), and dismissing the cause. We decide whether a municipality enjoys governmental immunity from the State's lawsuit for negligence and actual damages. Answering the question in the negative, we reverse the order and remand the cause.

### Standard of Review

In deciding a plea to the jurisdiction, a trial court considers the plaintiff's pleadings and any evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000); *see also Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 867–68 (Tex.2001). We review de novo a trial court's ruling on a jurisdictional plea, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *See Tex. Natural Res. Conser-*

vation Com'n v. IT–Davy, 74 S.W.3d 849, 855 (Tex.2002); Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Junemann v. Harris County, 84 S.W.3d 689, 693 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

## Background

The parties submitted no evidence; thus, our facts come from the State's petition, viewed in the appropriate light. See Tex. Ass'n of Bus., 852 S.W.2d at 446. The City and Galveston County asked the Texas Department of Transportation ("TxDOT") to build a roadway in Galveston County. As part of the agreement, the City "provided for the adjustment of all utilities, including a municipal water line which ran underneath a ramp approach and bridge deck of the roadway." The finished roadway was later designated as part of the State highway system. The City's waterline underlying the highway ruptured, causing erosion that threatened to collapse the highway and its bridge structures. The State spent its funds to repair the damage.

The State, on behalf of TxDOT, sued the City for negligence in the installation, maintenance, and upkeep of the water line. The State sought actual damages of $180,872.53, pre-judgment interest, attorney's fees, and costs. The City asserted governmental immunity from suit and filed a jurisdictional plea.[1] Specifically, the City argued that it enjoyed governmental immunity from suit and that the State had not pleaded a cause of action for which the Texas Tort Claims Act[2] ("TTCA") waived that immunity. The State responded on the ground that the City did not enjoy

governmental immunity from the State's claims against it because the City's immunity derives wholly from that of the State. After a non-evidentiary hearing, the trial court granted the City's jurisdictional plea and dismissed the cause.

## The City Does Not Enjoy Governmental Immunity from the State's Suit Asserting Negligence Claims for Actual Damages

Neither party disputes that the City performed a governmental function in committing the acts alleged by the State to have been negligent. See Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(11), (32) (Vernon 1997 & Supp.2004–2005) (defining municipality's governmental functions as including "waterworks" and "water and sewer service"); see also City of Dallas v. Reata Constr. Corp., 83 S.W.3d 392, 396 (Tex.App.-Dallas 2002) (holding that section 101.0215(11) and (32) encompass the act of marking underground water delivery system), rev'd on other grounds, No. 02–1031, 2004 WL 726906, —— S.W.3d —— (Tex. Apr.2, 2004). A city's performance of a governmental function entitles it to immunity from suit brought by private parties for tort damages arising out of that function's performance, absent a waiver of that immunity from suit in, for example, the TTCA. See, e.g., Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.0215(a), 101.025 (Vernon 1997 & Supp. 2004–2005).

In its sole issue, the State maintains that the trial court erred in granting the City's jurisdictional plea because any immunity from suit that the City possesses, as a political subdivision of the State, is an

---

1. The motion that the City filed was a combined jurisdictional plea, traditional summary judgment motion, and special exception, but the trial court granted the motion only to the extent that it asserted a jurisdictional plea.

2. See Tex. Civ. Prac. & Rem Code Ann. §§ 101.001–.109 (Vernon 1997 & Supp.2004–2005).

extension of the State's own immunity from suit and does not shield the city against the claims of the State itself. As the State explains, the City's immunity from suit "does not arise from any inherent sovereignty of [its] own, but instead derives from [its] status as [a] political subdivisio[n] of the State"; accordingly, the City impermissibly asserts "the State's immunity against the State itself." From this premise, the State concludes that no waiver of immunity from suit from within the TTCA is required for the State to sue the City for the latter's negligence.

## A. Municipalities Derive Their Immunity From That of the State, as Sovereign

We look to common-law principles to determine whether the City enjoys governmental immunity from suit in this case. *See Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002) ("In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enactment.").

Municipalities are political subdivisions of the State. *See Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of Galveston Wharves,* 62 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *cf.* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.2004–2005) (" 'Governmental unit' means: . . . a political subdivision of this state, including any city . . . ."). Since 1884, municipalities have enjoyed immunity when performing governmental functions, but not when performing proprietary functions. *See, e.g., City of Galveston v. Posnainsky,* 62 Tex. 118, 132–33 (1884) (first distinguishing between municipality's governmental and proprietary functions for purposes of im-

munity from tort claims). In reaching this holding, the *Posnainsky* court reasoned that

> in so far as municipal corporations . . . exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state—they should *be deemed agencies of the state,* and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, *they should stand as does sovereignty, whose agents they are,* subject to be sued only when the state, by statute, declares they may be.

*Id.* at 127 (emphasis added). The supreme court's reasoning shows that municipalities enjoy immunity from suit for governmental activity, not due to any inherent sovereignty, but, rather, because the State cloaks them with the State's sovereign immunity from suit while they carry out the State's public purposes. *See id.* at 126–27. Thus, any immunity from suit that a municipality enjoys derives solely from the State's immunity—the former receives immunity from suit only when carrying out governmental activities implicitly delegated to it to carry out in the latter's stead. *See id.* at 128; *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (defining "governmental functions" as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public . . . ."). Texas courts have repeatedly noted or applied variations of the "derived immunity" reasoning that the *Posnainsky* court first recognized.[3]

---

**3.** *See, e.g., Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 n. 12 (Tex.2000) (citing *Posnainsky* and noting its

explanation that city is deemed agent of state for sovereign-immunity purposes when city exercises powers for public purpose); *Gates v.*

Our sister court in Austin, based on a derived immunity reasoning, recently resolved an issue similar to the one before us in favor of the State. *See Tex. Workers' Comp. Com'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund,* 14 S.W.3d 801, 806 (Tex.App.-Austin 2000, pet. denied). In *Eagle Pass,* the Texas Workers' Compensation Commission ("TWCC"), a statewide agency,[4] assessed administrative penalties against the city and its transportation authority ("Capital Metro") for their having made late benefits payments in violation of the Labor Code. *See id.* at 803. The city and Capital Metro were undisputedly "political subdivisions." *See id.* at 802–03, 805–06. The city and Capital Metro admitted violations, but claimed immunity from suit for administrative penalties under the sovereign-immunity doctrine. *See id.* at 803. The Austin Court of Appeals rejected the assertion, holding instead that a defense of immunity from suit was "inapplicable" to the State's enforcement action:

[M]unicipalities are created as political subdivisions of the State and "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." A municipality's sovereignty is dependent upon that of the State.... Because political

*City of Dallas,* 704 S.W.2d 737, 738–39 (Tex. 1986) ("The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality 'as the agent of the State in furtherance of general law for the interest of the public at large.' ") (citation omitted); *State v. Brannan,* 111 S.W.2d 347, 348–49 (Tex.Civ.App.-Waco 1937, writ ref'd) ("In other words, a city has no sovereignty of its own and likewise no immunity of its own, but borrows its sovereignty from the state and is immune only in so far as it acts as an agent of the state."); *City of San Benito v. Ebarb,* 88 S.W.3d 711, 720 (Tex.App.-Corpus Christi 2002, pet. denied) ("A city is deemed an agent of the state for sovereign immunity purposes when exercising its powers for a public purpose."); *Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of Galveston Wharves,* 62 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) ("Municipalities, such as the City of Galveston, are creatures of our law and are created as political subdivisions of the state as a convenient agency for the exercise of such powers as are conferred upon them by the state."); *Tex. Workers' Comp. Com'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund,* 14 S.W.3d 801, 803–04 (Tex. App.-Austin 2000, pet. denied) ("A municipality's sovereignty is dependent upon that of the State.... [Municipalities'] immunity results from agency principles...."); *Bailey v. City of Austin,* 972 S.W.2d 180, 192 (Tex.App.-Austin 1998, pet. denied) ("Governmental functions are those public acts which the municipality performs 'as the agent of the State in furtherance of general law for the interest of the public at large.' ") (quoting *Gates,* 704 S.W.2d at 738); *Lawrence v. City of Wichita Falls,* 906 S.W.2d 113, 115 (Tex.App.-Fort Worth 1995, writ denied) ("Historically, under the common-law doctrine of sovereign immunity, municipalities were immune from liability as agents of the State."); *see also City of Houston v. Southwest Concrete Construction, Inc.,* 835 S.W.2d 728, 730 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (stating that municipality is "afforded the state's sovereign immunity" in performing governmental functions as defined by TTCA, except to extent that TTCA waives immunity); *Faulk v. City of Tyler,* 389 S.W.2d 706, 707 (Tex.Civ. App.-Tyler 1965, writ ref'd n.r.e.) ("As such sub-divisions of the State, exercising locally a portion of the powers of a State, such municipalities have no greater rights, immunities, or exemptions than does the State of Texas from which exclusively it derives its rights and powers."); *cf. City of Beaumont v. Calder Place Corp.,* 143 Tex. 244, 183 S.W.2d 713, 716 (1944) ("Respondent [corporation] could no more circumscribe the exercise of [the power to own, to operate, and to maintain a water-works system] in the hands of the agent [home-rule municipality] ... than it could if that power were still in the hands of the principal, the State of Texas.").

4. *See* Tex. Lab.Code Ann. §§ 402.001(a), 402.002(b), 402.061, 403.001, 403.005 (Vernon 1996 & Supp.2004–2005).

subdivisions of the State do not possess such independent sovereignty, they have no immunity as against the State.

Under the common law doctrine of immunity, municipalities and other political subdivisions of the State possess limited immunity from actions brought by private third parties. This immunity results from agency principles and the fact that municipalities and political subdivisions are agents of the State. A political subdivision's immunity is a privilege afforded it based on its existence as a subdivision of the State, and "[a] municipality, *as a political subdivision of the state*, is not liable for the acts or conduct of its officers or employees. . . ." Thus, a political subdivision's derivative immunity acts as a shield against actions brought by private parties but not as a shield against the State, from which the subdivision derives its immunity.

*Id.* at 803–04 (citations omitted; emphasis in original).

Cases from other jurisdictions support the *Eagle Pass* court's holding and apply similar reasoning to tort suits brought by the State. *See Bd. of Educ. of Prince George's County v. Mayor & Common Council of the Town of Riverdale*, 320 Md. 384, 578 A.2d 207, 210 (1990) (in tort suit

brought by state, after noting that plaintiff was "state agency," holding that "the immunity of · . . . municipalities is derived from the State's sovereign immunity. . . . [T]he nature of governmental immunity for . . . municipalities prevents them from asserting the defense of immunity when sued by the State or a State agency."); *Ohio v. City of Bowling Green*, 38 Ohio St.2d 281, 313 N.E.2d 409, 412 & n. 2 (1974) ("[A municipality's] immunity is derivative; it arises because the municipality, when performing a governmental function, is acting as an arm or agent of the state. . . . [W]here the injured party is the state itself, . . . the situation resembles a suit by a principal against an agent whose negligence has resulted in damage to the principal. In such a situation it would be illogical to allow the municipality to assert its general tort immunity against the very source of that immunity.").[5]

■ We agree with the *Eagle Pass* court's reasoning and its conclusion. Accordingly, we hold that governmental immunity does *not* shield a municipality from the State's suit asserting tort claims for actual damages because any immunity that a municipality enjoys derives from the State's own immunity.

---

**5.** The distinctions that the City attempts to draw between the law of these other jurisdictions and that of Texas are unpersuasive. For example, whether, as the City argues, these jurisdictions differ from Texas in recognizing how a waiver of immunity is accomplished is immaterial because neither these courts (nor the *Eagle Pass* court) have *waived* immunity; rather, these courts recognized that a municipality's immunity does not extend to tort claims brought in the name of the State. We likewise find insignificant the fact, noted by the City, that, in *Ohio v. City of Bowling Green*, the state was obliged to sue the city under the "public trust" doctrine, which at least one Texas court has noted has "not fared well" in Texas. *See id.*, 38 Ohio St.2d 281, 313 N.E.2d 409, 411 (1974). *Compare Nat-*

*land Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 60 (Tex.App.-Corpus Christi 1993, writ denied) ("This [public-trust] doctrine that the sovereign holds submerged lands in trust for the benefit and use of the public . . . has not fared well in Texas jurisprudence."). Whatever effect the public-trust doctrine might have on governmental immunity, the court separated its public-trust holding from its derived immunity holding, and the logic that the court applied to the latter holding supports the conclusion in *Eagle Pass*. *See City of Bowling Green*, 313 N.E.2d at 410, 411 (noting in "Syllabus by the Court" that appellant's challenge to which public-trust doctrine applied was raised "apart from any issue [of] sovereign immunity" and treating the two holdings separately in opinion).

The City argues that we should distinguish this case from *Eagle Pass* because (1) the Labor Code expressly subjected the *Eagle Pass* defendants to administrative penalties, thus "accomplishing a clear and unambiguous waiver of whatever [governmental] immunity [did] exist," and (2) *Eagle Pass* involved administrative penalties, rather than tort damages.

■ As for the first distinction, the City concedes that the *Eagle Pass* court did not base its pertinent holding on the fact that the Code provided for administrative penalties against political subdivisions. *See Eagle Pass,* 14 S.W.3d at 804. Indeed, the *Eagle Pass* court expressly concluded that governmental immunity simply *did not apply* to TWCC's imposition of penalties, and, thus, an analysis of statutory waiver was unnecessary. *See id.* at 804. If immunity from suit does not apply, then no waiver of immunity from suit is necessary: one need not waive that which does not exist.[6] *Cf. Fed. Sign v. Tex. S. Univ.,* 951

---

**6.** Justice Keyes's dissenting opinion asserts that our holding "contravenes the plain language of the applicable statute, the TTCA...." The TTCA waives sovereign immunity from suit, but does not confer it. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a); *Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002). No statutory waiver is implicated if there is no immunity from suit to waive. Because it is the State that has sued a city, the TTCA's provisions waiving immunity from suit do not apply. We likewise reject Justice Jennings's arguments, in his opinion dissenting from denial of en banc consideration, based on the TTCA's provisions waiving immunity from liability (and, by incorporation, from suit). *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (establishing waiver of immunity from liability by providing, "A governmental unit ... is liable for: [enumerated acts]."). In effect, Justice Jennings argues that, because section 101.021 does not mention that common-law immunity does not extend to suits brought by the State, the Legislature must have believed that common-law immunity applies to governmental units regardless of who sues them, including the State. We disagree. The Legislature created the TTCA with the purpose of waiving preexisting common-law immunity from suit and liability in limited circumstances, rather than with the purpose of spelling out every parameter of that common-law immunity. *See Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994) ("In 1969, the Legislature enacted the [TTCA] to waive governmental immunity only in certain circumstances."); *Tex. Dep't of Mental Health & Mental Retardation v. Petty,* 848 S.W.2d 680, 686 (Tex.1992) (Cornyn, J., dissenting) (setting out TTCA's legislative history); *see also City of Tyler v. Likes,* 962 S.W.2d 489,

494 (Tex.1997) (noting that TTCA "merely waives sovereign immunity as a bar to a suit that would otherwise exist."). Section 101.021's failure to note every situation in which common-law immunity might or might not apply thus does not have the significance that Justice Jennings attributes to it. Moreover, it is centuries of judicial common-law precedent that created immunity, not the Legislature. *See Lawson,* 87 S.W.3d at 520; *cf. Likes,* 962 S.W.2d at 503 (noting that constitutional amendment allowing Legislature to classify municipalities' acts as "governmental" precluded open-courts challenge that otherwise could have been asserted against TTCA's amendment expanding immunity by recharacterizing municipal activity as governmental). Common-law immunity from suit has never extended to claims brought by the State against its subdivisions, and no waiver of immunity from suit from within the TTCA is thus needed or applies. Instead, absent the Legislature's express disavowal of the State's right to seek redress in Texas courts against its own subdivisions, it is not for the Judiciary to abrogate this right of the sovereign through the common law. We also reject amici's assertion that Civil Practice and Remedies Code chapter 107, which "applies to resolutions granting permission to sue the state or any of its agencies," indicates that legislative consent is required. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 107.001–.005 (Vernon 1997). Like the TTCA's applicable provisions, the corresponding provisions of Chapter 107 necessarily apply only if there is immunity from suit to waive. Amici nonetheless note that chapter 107 mentions resolutions "that [grant] *a person* permission to sue the state." Tex. Civ. Prac. & Rem.Code Ann. § 107.002(a) (Vernon 1997) (emphasis added). They argue that, because "person" is defined to include any

S.W.2d 401, 404 (Tex.1997) (noting that private litigant does not need legislative permission to sue State for state official's violations of state law because such violations are not acts of State, so that suit "is not a suit against the State that sovereign immunity bars"; thus concluding that "[a] party can maintain a suit to determine its rights without legislative permission"), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex.2001).

▪ Like the City, Justice Keyes's dissenting opinion argues that the *Eagle Pass* court did not need to resolve its case on the basis of the political subdivisions' derivative immunity, but could instead have resolved the case on the ground that the Labor Code acted as a legislative waiver of immunity from suit. *See Eagle Pass*, 14 S.W.3d at 805 (in rejecting argument that, even if governmental immunity did not apply, Labor Code still did not empower Commission to assess penalties against political subdivisions, holding that the city and Capital Metro were "indisputedly 'persons' against which the Commission may assess an administrative penalty"). The *Eagle Pass* court could have done so, but expressly did not. It did not do so evidently because it—as do we—recognized that immunity from suit did not exist in the first place. We thus reject Justice Keyes's (and Justice Jennings's) assertion that our holding creates an exception to immunity from suit: we do not create an

exception, but instead recognize that no immunity from suit exists when the sovereign seeks judicial redress. We similarly reject Justice Keyes's argument that our holding "goes well beyond" that of the *Eagle Pass* court for the reason that "there is no statutory authority to support the majority's decision that Galveston lacks immunity to TxDOT's tort claims, unlike the statutory authority provided by the Labor Code in *Eagle Pass*." The *Eagle Pass* court expressly declined to confine its pertinent holding to an interpretation of the Labor Code's authorization for the assessment of penalties. *See id.* at 803–04.

As for the second distinction, we recognize that *Eagle Pass* involved the State's assessment of administrative penalties, *i.e.*, the State's regulatory authority, rather than a tort suit brought by the State. *See Eagle Pass*, 14 S.W.3d at 803. We also recognize that tort claims and administrative penalties differ in important ways. Nonetheless, the *Eagle Pass* court's reasoning encompasses the State's tort claims. The fact that administrative penalties are fixed by statute, as the City notes, rather than unliquidated, as tort damages generally are, does not change the logic upon which *Eagle Pass* or derived immunity law is based. If a municipality does not enjoy immunity from suit brought by the sovereign from whom its immunity derives, then it should not matter whether the sovereign is seeking actual damages in tort or administrative penalties. We also reject Justice

---

"government or governmental subdivision or agency," chapter 107 impliedly includes TxDOT among those required to seek legislative permission to sue. *See* Tex. Gov't Code Ann. § 311.005(2) (Vernon 1998); Tex. Civ. Prac. & Rem.Code Ann. §§ 1.002, 107.001–.005 (Vernon 1997). However, that definition of person applies *unless* "the statute or context in which the word or phrase is used requires a different definition." Tex. Gov't Code Ann. § 311.005. It makes no sense to require a

legislative waiver of immunity from suit when no immunity from suit exists at all. Moreover, chapter 107 requires that the claimant serve "citation and other required process . . . on the attorney general," as well as on the individual whom the resolution designates as representative of the state-agency defendant. Tex. Civ. Prac. & Rem.Code Ann. § 107.002(3). It likewise makes no sense to require service on the State, via the Attorney General, when the State is also the plaintiff in the same suit.

Jennings's argument that *Eagle Pass* does not support our holding because its holding is allegedly limited to the context of the State's regulatory authority. To the contrary, the *Eagle Pass* court's holding is expressly broader than that, and its rationale and conclusion logically apply in any context in which the State sues its political subdivision. *See id.* Accordingly, we reject the City's arguments distinguishing *Eagle Pass*.[7]

## B. The Policy Behind Governmental Immunity Supports the Conclusion that the City Possesses No Immunity From the State's Claim

The City further argues that holding that municipalities do not enjoy immunity from the State's tort claims conflicts with the policy reasons behind governmental immunity. Sovereign immunity protects the public treasury by preventing the shifting of tax resources away from their intended purposes and towards defending lawsuits and paying judgments. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003); *IT–Davy*, 74 S.W.3d at 854. We acknowledge that allowing the State to recover damages from a municipality potentially shifts costs from the State to the local level, depleting local coffers of funds that have already been budgeted for local matters. This shifting, however, also replenishes other public funds—those allocated in the state budget for public projects of the State and its agencies—that are lost due to the municipality's alleged fault. For purposes of immunity, therefore, tort suits by the State

differ in this significant respect from tort suits by individuals.

## C. The State Has Brought this Suit in its Sovereign Capacity, and its Doing So Does Not Violate the Separation-of-Powers Doctrine

The City alternatively argues that, even if it does not enjoy immunity from suit from the sovereign's tort claims, the City enjoys immunity from suit here because the State did not bring this suit in its capacity as sovereign. The City reasons that (1) the Judicial Department defers to the Legislature to waive sovereign immunity,[8] though sovereign immunity is a centuries-old common-law creature of the Judiciary;[9] (2) the Attorney General is a member of the Executive Department,[10] not the Legislative Department; and (3) by making a claim against a municipality on behalf of a department of the State, the Attorney General impermissibly is attempting to "share the Legislature's power to set the appropriate boundaries on suits for damages paid by the people's money out of state or local treasuries." Similarly, starting from the premise that the people, rather than any single state agency, constitute the sovereign, the City further argues that the Attorney General has not appeared on behalf of the "state as state," but instead "has appeared merely on behalf of TxDOT—a constituent state agency," which the Legislature has "never empowered to exempt any city functions from the general rule of governmental immunity."

---

**7.** As a final matter, we note that this appeal does not concern immunity from liability, *e.g.*, whether a political subdivision has immunity from liability when sued by the State or whether the Legislature can cap or bar damages against a political subdivision in suits like this. The matter simply is not before us, and we express no opinion about it.

**8.** *See Tex. Natural Res. Conservation Com'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002).

**9.** *See Lawson*, 87 S.W.3d at 520.

**10.** *See* Tex. Const. art. IV, § 1.

The City is thus arguing that TxDOT has not sued in the State's sovereign capacity and, alternatively, that if TxDOT is suing in the State's sovereign capacity, it is violating the Constitution's separation-of-powers provision by doing so. *See* TEX. CONST. art. II, § 1. We address both arguments.

We first treat the City's argument that the Attorney General does not represent the State as sovereign in this suit, but is instead representing only "TxDOT—a constituent state agency." We agree that the people *do* constitute the sovereign (*i.e.*, "the State"),[11] but it is indisputable that the people act as sovereign through the branches, agencies, and departments of the state government that they have adopted. *See, e.g.*, TEX. CONST. art. I, § 2, art. II, § 1, art. III, § 1, art. IV, § 1, art. V, § 1. The department of state government through which the sovereign people plan, construct, and maintain their state highways (the property alleged to have been damaged here) is TxDOT. *See* TEX. TRANSP. CODE ANN. §§ 201.103(a), 201.601, 201.202(a)(2) (Vernon 1999 & Supp.2004–2005). TxDOT is considered "the State" because, among other things, it has statewide jurisdiction and the governor appoints certain of its governing officials.[12] Accordingly, the Attorney General does not appear "merely on behalf of TxDOT" in this suit, but instead represents the interests of the sovereign State of Texas.[13]

This is, of course, the Attorney General's job. His primary duties are "to render legal advice in opinions to various political agencies *and to represent the State in civil litigation.*" *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex.2001) (emphasis added); *see* TEX. CONST. art. IV, § 22 ("The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party ... and give legal advice in writing to the Governor and other executive officers ... and perform such other duties as may be required by law."); TEX. GOV'T CODE ANN. § 402.021 (Vernon 1998) ("The attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals."); *cf.* TEX. CONST. art. V, § 21 (as part of the Judicial Department, "[t]he County Attorneys shall represent the State in all cases in the District and inferior courts...."). The Attorney General has thus been described as "the State's chief legal officer." *Del Rio*, 67 S.W.3d at 92. In appearing in this litigation, therefore, the Attorney General is fulfilling his duty to represent the State in civil suits. Contrary to the City's argument, the Attorney General is not usurping legislative power by "waiving" immunity from suit, but, rather, represents the position of the State, as its advocate, that no immunity

---

11. *See* TEX. CONST. art. I, § 2.

12. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 (Tex.1993); *see also Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex.1980); *see also Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000) (noting that immunity applies to State and "its agencies such as TxDOT."); TEX. TRANSP. CODE ANN. §§ 201.002, 201.051(a), 201.053, 201.101, 201.103, 201.201, 201.202, 201.601, 202.001(a), 222.001, 222.002.

13. Contrary to the dissenting opinion's charge, our holdings concerning separation of powers, whom the Attorney General represents in this suit, and whether the City enjoys immunity from the State's suit do not rest on a belief that governments of political subdivisions do not represent "the people." Local governments represent their constituent populations just as statewide governments do. Both represent "the people." It is simply in responding to the City's implicit allegation that TxDOT does not represent the sovereign people that we note that TxDOT does.

exists in the first instance for this type of claim. As the State's chief legal officer, it is within his ambit to seek legal redress in the courts on behalf of the State.

 As for the City's contention that our holding allows the Attorney General (or TxDOT) to violate the separation-of-powers doctrine [14]—a charge that the dissenting opinion also asserts—we disagree. The City contends that allowing the Attorney General, a member of the Executive Department, to sue effectively "waives" immunity from suit, a power traditionally placed with the Legislature in our common-law precedent.

 If the Attorney General sought a judicial waiver of the City's immunity on the State's behalf, then he would have to defer to the Legislature to accede to such a waiver. But the State and the Attorney General seek no such thing. Rather, they contend that a political subdivision has no judicial immunity from the State's suit to begin with because the State is the supreme sovereign. Thus, we decide in this case whether the City enjoys immunity from suit *in the first instance*. If the City does not enjoy immunity from this type of suit at all, then there is no immunity from suit to waive. If there is no immunity from suit to waive, then the Attorney General may represent the State in this claim

for redress.[15] *See* TEX. CONST. art. IV, § 22; TEX. GOV'T CODE ANN. § 402.021; *Del Rio*, 67 S.W.3d at 92. We will not judicially limit the State's power to seek redress absent legislative action or constitutional amendment limiting the State's power to do so.

## D. Home–Rule Status Does Not Make a Municipality Its Own Sovereign for Purposes of Immunity

The City argues that the home-rule amendment allows the City to enjoy "immunity from suit and liability to the same extent as the State itself." *See* TEX. CONST. art. XI, § 5; *see also City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ) (noting City of Galveston's home-rule status).

 The State of Texas added the home-rule amendment to the Texas Constitution in 1912. *See* 22 DAVID B. BROOKS, TEXAS PRACTICE: MUNICIPAL LAW & PRACTICE § 1.17 (2nd ed.1999) [hereinafter "BROOKS"]; TEX. CONST. art. XI, § 5; *see also* Act of March 31, 1913, 33rd Leg., R.S., ch. 147, § 4, 1913 Tex. Gen. Laws 307, 310–16 (now appearing at TEX. LOC. GOV'T CODE ANN. §§ 51.071–.079 (Vernon 1999 & Supp.2004–2005)) (enabling legislation). The purpose of the home-rule amendment is "to bestow upon the cities

---

14. The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy.... [A]nd no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.
TEX. CONST. art. II, § 1. "The separation-of-powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch." *Gen. Servs. Com'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex.2001).

15. For this reason, the opinions that amici cite for the proposition that the Texas Supreme Court has "rejected a number of arguments seeking to prove a waiver of sovereign immunity through actions other than legislative acts" are inapplicable. *See IT–Davy*, 74 S.W.3d at 856–58 (holding that State agency's fully accepting benefits under contract did not waive sovereign immunity from suit and that administrative agent, as part of Executive Department, could not waive immunity from suit in contract); *Little–Tex Insulation Co.*, 39 S.W.3d at 597 (holding that waiver-by-conduct exception to sovereign immunity from suit does not exist in breach-of-contract case).

coming under the … Amendment 'full power of local-self government.' … It was the intention … to give to cities the right to determine for themselves what kind of charter they should live under." *City of Houston v. City of Magnolia Park,* 115 Tex. 101, 276 S.W. 685, 689 (1925) (citation omitted); *accord City of Houston v. State ex rel. City of W. Univ. Place,* 142 Tex. 190, 176 S.W.2d 928, 929 (1943) (quoting *Magnolia Park* ). The amendment was intended "to obviate the necessity of [home-rule] cities coming to the Legislature whenever any change was desired in their charters, and in order to facilitate selfgovernment…." *Anderson v. Brandon,* 121 Tex. 188, 47 S.W.2d 261, 262 (1932); *see City of Wichita Falls v. Cont'l Oil Co.,* 117 Tex. 256, 1 S.W.2d 596, 597 (1928) (noting that "primary purpose" of amendment was "convenience and directness of this method of city government"). Accordingly, the amendment eliminated the longstanding practice of having the Legislature grant and amend special charters and instead allowed qualifying municipalities to adopt and to amend their charters without legislative approval, as long as the charter did not infringe upon the state Constitution or laws passed by the Legislature. *See* Tex. Const. art. XI, § 5; Tex. Loc. Gov't Code Ann. § 51.072 (Vernon 1999); *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 26 & 26 n. 5 (Tex. 2003); *Anderson,* 47 S.W.2d at 262; Brooks § 1.17.

▮▮▮ In carrying out these purposes, the home-rule amendment and its enabling statutes authorized municipalities "to do anything [that] the legislature could theretofore have authorized them to do."

*Forwood v. City of Taylor,* 147 Tex. 161, 214 S.W.2d 282, 286 (1948) (describing home-rule municipality as "a delegate of legislative power"); *City of San Antonio,* 111 S.W.3d at 26 n. 5. In this sense, home-rule cities derive their powers from the Texas Constitution. *See Proctor v. Andrews,* 972 S.W.2d 729, 733 (Tex.1998); *Tex. River Barges v. City of San Antonio,* 21 S.W.3d 347, 352 (Tex.App.-San Antonio 2000, pet. denied). Municipalities adopting a home-rule charter thus have "the full power of self government" and look to the Legislature only for limitations on their power. *Perry v. Greanias,* 95 S.W.3d 683, 694 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *accord Giles,* 902 S.W.2d at 170 (describing home-rule city's powers as "plenary"); *see* Tex. Loc. Gov't Code Ann. § 51.072(a) ("The [home-rule] municipality has full power of local self-government.").

▮▮▮ Although the home-rule amendment grants municipalities powers of self-determination, it does not—as the City argues—transform municipalities into *independent* sovereigns for purposes of immunity from suit. Indeed, the opposite is true. Like all municipalities, home-rule municipalities " 'represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them.' " *Lake Charles Harbor & Terminal Dist.,* 62 S.W.3d at 246 (quoting this holding of *Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (1946), despite fact that City of Galveston is home-rule city); *Eagle Pass,* 14 S.W.3d at 803 (holding same, despite fact that City of Eagle Pass is home-rule city).[16] The home-rule

---

16. *See also Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (1946); *Brannan,* 111 S.W.2d at 348–49 (noting that "a city has no sovereignty of its own and likewise no immunity of its own, but borrows its sovereignty from the state and is immune only in so far as it acts as an agent of the state."); *cf. City of Irving v. Dallas/Fort Worth Int'l Airport Bd.,* 894 S.W.2d 456, 465 (Tex.App.-Fort Worth 1995, writ denied) (noting, in context of Contract–Clause challenge, that "a municipality's

amendment's delegation of legislative authority did nothing to change the nature of state sovereignty. Accordingly, home-rule municipalities' immunity from suit for governmental functions does not arise from their home-rule status, but instead devolves from the State's sovereign immunity. *See Eagle Pass*, 14 S.W.3d at 803–04. Simply put, the State of Texas, in contrast to the United States of America, is not a federation of sovereign cities. Instead, the State of Texas is itself the sole, superior sovereign. *See Eagle Pass*, 14 S.W.3d at 803 ("While it is well established that sovereign immunity protects the federal government from state suits and vice versa, this immunity stems from the basic precept of federalism that the federal and several state governments each possess independent sovereignty. Because political subdivisions of the State do not possess such independent sovereignty, they have no immunity as against the State.").

If the City were correct that a home-rule municipality's immunity is coextensive with that of the State, the proprietary-governmental distinction that consistently

has been recognized for 120 years would disappear, so that a home-rule municipality would enjoy immunity from tort suits arising from *any* activity that it conducted— just as the State does [17]—not just for its governmental functions. Yet courts have repeatedly cited *Posnainsky*, noted the common-law proprietary-governmental distinction, or applied that distinction in considering the immunity of home-rule municipalities.[18] This is yet another reason that the City's position cannot be correct.

For these reasons, we reject the City's arguments based on its home-rule status.

## E. The Authority on Which the City Relies Does Not Control

Finally, the City relies on five opinions to support its argument that municipal immunity from suit is not derived from the State's or that a municipality enjoys immunity from the State's suit for tort damages.

The City first relies on *Texas Department of Transportation v. Able*, claiming that the majority's implicit rejection of an argument made by the dissent based on

---

sovereignty is dependent upon that of the state.").

**17.** *See Brannan*, 111 S.W.2d at 348 ("All authority possessed by a state is that conferred on it as a sovereignty by the people and consequently it can act in no other capacity than that of a sovereignty. It is inherently and exclusively sovereign and must necessarily act as such at all times and in all capacities. As a sovereignty, it is immune from liability for torts and since it can act in no other capacity than that of a sovereignty, it is necessarily immune from liability for torts at all times and in all its capacities.").

**18.** *See, e.g., Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840 & 840 n. 12; *Gates*, 704 S.W.2d at 738 (City of Dallas); *City of Corsicana v. Wren*, 159 Tex. 202, 317 S.W.2d 516, 517–19, 521 (1958); *City of Mexia v. Tooke*, 115 S.W.3d 618, 620–21 (Tex.App.-Waco 2003, pet. granted); *Perry v. Greanias*, 95

S.W.3d 683, 693–94 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (City of Houston); *Bailey*, 972 S.W.2d at 192–93 (City of Austin); *Lawrence*, 906 S.W.2d at 115; *Crownhill Homes, Inc. v. City of San Antonio*, 433 S.W.2d 448, 455 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.); *Green v. City of Amarillo*, 244 S.W. 241, 242 (Tex.Civ.App.-Amarillo 1922), *aff'd on same grounds*, 267 S.W. 702, 702 (Tex.Com.App.1924, judgm't adopted); *see also Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex.1998) (" 'Municipal corporations [including home-rule cities] are created for the exercise of certain functions of government.... [I]n so far as their character is governmental, they are agencies of the state, and subject to state control.' ") (citation omitted). We also note that the Legislature did not exempt home-rule municipalities when it carried forward the governmental-proprietary distinction in the TTCA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215 (Vernon Supp. 2004–2005).

the State's "superior-sovereign" status indicates that a superior-sovereign (or derived immunity) limit upon immunity does not exist. *See id.*, 35 S.W.3d 608 (Tex. 2000). *Able* did not involve a suit by the State against a municipality, however, and the majority's opinion did not discuss or reject the dissenting justices' analysis, but chose to address the issues presented on different grounds.

■ The City next relies on *Texas Department of Transportation v. City of Sunset Valley. See id.*, 92 S.W.3d 540 (Tex.App.-Austin 2002, pet. granted); *see also Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727 (Tex.App.-Austin 1999, no pet.) (earlier interlocutory appeal in same suit). In *Sunset Valley*, however, TxDOT asserted that it enjoyed sovereign immunity from the *city's* claims, which is the inverse situation from that existing here. *See id.*, 8 S.W.3d at 732–33. Nothing in the derivative-immunity law originating with *Posnainsky* precludes the State from asserting sovereign immunity from suit when it is sued by its own political subdivision.

The City further relies on *Guillory v. Port of Houston Authority. See id.*, 845 S.W.2d 812 (Tex.1993). In *Guillory*, the court rejected a private plaintiff's request to classify the port authority defendant's activities as proprietary functions, so that immunity would not be a bar, because (1) doing so would have required overruling precedent holding that such districts exercised solely governmental functions and (2) "the limitation on immunity which Guillory seeks has the same effect as a waiver," which the court concluded was a legislative matter. *Id.* at 814–15. Here, however, we do not waive or limit existing governmental immunity from suit. Instead, we recognize that the State is constitutionally empowered to sue and that the City's gov-

ernmental immunity from suits asserting such claims is wholly absent to begin with.

■ Finally, the City relies on two cases in which a non-municipal political subdivision sued a municipality for damages and in which the court assumed that immunity from suit or liability applied. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 839–40 (Tex. 2000); *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 313 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). We conclude that the cited cases do not apply in determining whether the City enjoys immunity from suit here because neither case involves the State's suing a political subdivision. Absent a statutory definition to the contrary, political subdivisions of the State are not, generally speaking, considered "the State." *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939–40 (Tex.1993) ("The ordinary meaning of 'state' ... envisions an entity having statewide jurisdiction, rather than an entity having local or limited jurisdiction.... '[A] political subdivision differs from a department, board or agency of the State.' ") (quoting *Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex.1980)). Generally speaking, for a governmental entity to be considered "the State," the entity must have statewide jurisdiction, have a governing person or body that is elected in statewide elections or is appointed by a state official, and lack the power to assess or to collect taxes. *See Monsanto*, 865 S.W.2d at 940–41; *see also Guar. Petroleum*, 609 S.W.2d at 531. In contrast, political subdivisions normally have jurisdiction over only a portion of the state, have members of their governing body who are elected in local elections or are appointed by locally elected officials, and have the power to assess and to collect taxes. *See Monsanto*, 865 S.W.2d at 940;

*see also Guar. Petroleum,* 609 S.W.2d at 531.

We conclude that these general definitions of "the State" and "political subdivisions" make sense in the context of determining immunity from suit in lawsuits between governmental entities, and we adopt these definitions for that specific context.[19] The plaintiffs in the cases cited by the City are political subdivisions of the State or like entities with limited jurisdiction.[20] In contrast, we do not have before us a suit between subdivisions of the State, but instead a suit by the State against a political subdivision.

The opinions that amici curiae offer in support of the City's position are similarly distinguishable because, in them, the plaintiff is a political subdivision or a private entity or because the defendant or counter-defendant is a statewide agency.[21]

## Conclusion

■ We hold that a municipality—even a home-rule one—does not enjoy governmental immunity from the State's suit for negligence against it. Just as the decision to waive or to abrogate immunity from suit lies with the Legislature or the people

**19.** The adopted distinction between which governmental entities constitute the State and which constitute political subdivisions does not, as the dissenting opinion suggests, open "a Pandora's box of future litigation" over which entities constitute "the State" for purposes of suits like this. The distinction, as set out in this opinion and in the cited cases from the Texas Supreme Court, is no more difficult to apply than in other contexts. Additionally, the dissenting opinion's charge that the Legislature itself would fall outside our definition of "the State" is unsupportable. The Legislature constitutes one of the three constitutional Departments, *i.e.,* branches, comprising our state government and is not merely a governmental agency or board. *See* TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.' "). The Legislature can pass laws with statewide application. Its members are elected from around the State. If ever an entity was considered "the State," it would be the Legislature. Indeed, the Attorney General is the statewide officer charged with enforcing the Legislature's power in the courts. *See* TEX. CONST. art. IV, § 22 ("He shall … perform such other duties as may be required by law."). Such an entity plainly fits within the general definition of "State." *See Monsanto,* 865 S.W.2d at 939–40 (setting out ordinary meaning of "the State"); *cf. id.* ("This interpretation of 'state' comports with the legislature's ordinary use of the word. State government is defined generally in terms of the *executive, legislative, and/or judicial branches,*

excluding entities with limited jurisdiction.") (emphasis added).

**20.** *See San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 282 (Tex.1996) (independent school districts); *Williams v. Houston Firemen's Relief & Ret. Fund,* 121 S.W.3d 415, 437 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (municipality); *New Caney Indep. Sch. Dist. Bd. of Trs. v. Burnham Auto-Country, Inc.,* 960 S.W.2d 957, 958 (Tex.App.-Texarkana 1998, no pet.) (school districts); *see also* TEX. EDUC.CODE ANN. §§ 11.051–.063, 11.152 (Vernon 1996 & Supp.2004–2005) (school districts); *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (Vernon 1997) (including school district as political subdivision for purposes of TTCA).

**21.** *See Hays County v. Hays County Water Planning P'ship,* 106 S.W.3d 349, 358 (Tex. App.-Austin 2003, no pet.) (indicating that partnership plaintiff was community group of property owners); *Tex. Mun. Power Agency v. Pub. Util. Com'n,* 100 S.W.3d 510, 513 (Tex. App.-Austin 2003, pet. denied) (city and Public Utility Commission as defendants); *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.,* 53 S.W.3d 447, 449–50 (Tex.App.-San Antonio 2001, no pet.) (TxDOT as counter-defendant); *Denver City Indep. Sch. Dist. v. Moses,* 51 S.W.3d 386, 389 (Tex.App.-Amarillo 2001, no pet.) (Texas Education Agency and its commissioner as defendants); *Harris County v. Cypress Forest Pub. Util. Dist. of Harris County,* 50 S.W.3d 551 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

through Constitutional amendment, so does the decision to limit the State's power to sue and to seek redress upon behalf of the people of Texas in Texas courts. Our holding today recognizes that the sovereign State possesses the authority to seek redress in its courts against its own political subdivisions and that they possess no blanket immunity from suit in such situations.

We do not address the State's wisdom in bringing a claim in tort, but only its authority to do so. Ultimately, the State, as sovereign, is empowered to seek redress and to enforce state law. Without such authority, political subdivisions of the State would adopt the mantle of independent sovereigns over whom the State, through its chief legal officer, could seek no redress.

We reverse the order and remand the cause with instructions for the trial court to reinstate the cause and to deny the City's jurisdictional plea.

Justice KEYES, dissenting.

En banc consideration was requested.

A majority of Justices voted against en banc consideration.

Justice JENNINGS, dissenting from the denial of en banc consideration.

EVELYN V. KEYES, Justice, dissenting.

The majority holds that a municipality enjoys no immunity from a claim by a statewide governmental agency for damages for negligence in the performance of a governmental function, here the installation, maintenance, and upkeep of a water line that erupted, causing damage to a state highway. I respectfully dissent.

*Sovereign and Governmental Immunity*

Since 1884, municipalities have enjoyed immunity from suit for tort claims when performing governmental functions unless that immunity is expressly waived by statute. *See City of Galveston v. Posnainsky,* 62 Tex. 118, 133 (1884) (first recognizing municipality's immunity to suit arising from performance of governmental functions). Governmental functions, as defined by the Texas Tort Claims Act (TTCA), are "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon 2004). The immunity enjoyed by a municipality in the exercise of its governmental functions is called "governmental immunity," as is the immunity of all "political subdivisions of the State, including counties, cities, and school districts," as opposed to "sovereign immunity," which is enjoyed by the State itself and "various divisions of state government, including agencies, boards, hospitals, and universities." *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003).[1] Both sovereign and governmental immunity provide immunity to both suit and liability. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003).

It is undisputed that, in this case, the City was performing a governmental function in committing the acts of negligence giving rise to the State's claims and that normally the TTCA recognizes the immu-

1. The terms "sovereign immunity" and "governmental immunity" have frequently been used interchangeably by the Texas courts and Legislature. *See, e.g.,* section 101.025 of the TTCA, "Waiver of Governmental Immunity," which, despite its title and applicability to municipalities, provides in the text for waiver of "sovereign immunity" from suit and liability. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 2004).

nity of municipalities from such claims.[2] It is further undisputed that no other applicable statute waives the municipality's immunity from suit. Thus any grounds for the City's amenability to suit and liability in this case must be sought outside the purview of the TTCA and all other statutes, which is where the majority finds it.

The majority opines that the City enjoys no immunity to a negligence action brought by TxDOT, a statewide agency, for damages for the City's performance of an admittedly governmental function—the installation, maintenance, and upkeep of a waterline—because TxDOT, as a state agency, is the State, whereas the City is a political subdivision of the State, and therefore enjoys only immunity *derived* from the State, which, being derivative, cannot be asserted against the State. The majority concludes that no waiver of immunity is necessary, or even possible, when a municipality is sued by the State, since a municipality has no immunity to waive against the sovereign from which its immunity derives. The majority bases its claim on the following passage from *Posnainsky*:

> in so far as municipal corporations … exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the ac-

tion be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be.

*Posnainsky*, 62 Tex. at 127.

In my view, the majority misconstrues the critical language in the passage from *Posnainsky* on which it relies, which states that insofar as municipalities exercise governmental powers, "they should be *deemed agencies* of the state, and *not subject to be sued* for any act or omission occurring while in the exercise of such power, *unless, by statute, the action be given.*" *Id.* (emphasis added). The majority leaps from *Posnainsky's* statement that a municipality is an agent of the state to the conclusion that a municipality's immunity is therefore derivative and, merely because it is derivative, may not be asserted against the sovereign from which it derives. It distinguishes the immunity of a State agency, such as TxDOT, from that of a deemed State agency, such as the City, declaring the former's immunity to be "sovereign," hence *not* derivative, while the latter's *is* derivative, thus not sovereign, so that a true State agency is not subject to suit by the State, but a deemed State agency is. I can find no basis for this construction of *Posnainsky*.

I interpret the plain language of *Posnainsky* as stating that a municipality has immunity to liability and suit in its performance of governmental functions by virtue of the fact that those functions are conferred on the municipality by the sover-

---

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (Vernon 2004) (providing that a municipality is liable "under this chapter" for its governmental functions, including "waterworks" and "water and sewer service"); § 101.021 (providing that, under the TTCA, a governmental unit is liable for property damage, personal injury, and death caused by the negligence of an employee acting within his scope of employment *only* if the property damage, injury, or death arises from the operation or use of a motor-driven vehicle and the employee would be personally liable to the claimant under Texas law); and § 101.025 (providing, "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter"). The TTCA contains no other waiver of immunity.

eign, so that the municipality is deemed an agent of the State in performing those functions and, as such, does indeed share derivatively in that sovereign's immunity, unless the Legislature, by statute, declares that the municipality may be sued. I see no logical way to infer from this language that immunity derived from the State does not exist to be asserted against the State from which it derives and therefore need not be waived by statute. Thus, contrary to the majority, I read *Posnainsky* as holding that a municipality has sovereign immunity with respect to its exercise of governmental functions precisely because those functions are conferred on it by the State; thus it shares derivatively in the State's sovereign immunity when exercising governmental functions; and, having sovereign immunity,[3] like the State itself, it cannot be sued by anyone, including another governmental entity of any type, without legislative permission.

A long line of well-established authority supports this interpretation of *Posnainsky* by holding that any governmental entity, including a municipality, enjoys immunity to suit for its governmental actions unless that immunity is expressly waived by the Legislature. *See Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004) ("Sovereign immunity from suit defeats a trial court's subject matter jurisdiction unless the state expressly consents to suit.... Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts.") (citation omitted); *Texas Natural Res. Conservation Com'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002) ("If the legislature has not expressly waived immunity from suit, the State retains such immunity even if its

liability is not disputed."); *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999)("The party suing [a] governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission."). It follows from this general principle that "the State is not liable for the negligence of its employees absent constitutional or statutory provisions for liability." *University of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994). Thus, a municipality, enjoying immunity to suit derived from the State, is not liable for its employees' performance of governmental functions absent constitutional or statutory provisions permitting the municipality to be sued-whether by the State or by anyone else. *See Sykes,* 136 S.W.3d at 640 (county immune from negligence action brought by former jail inmate's wife); *Catalina Dev.,* 121 S.W.3d at 705 ("[A] governmental unit waives immunity from suit only through its express consent."). The majority opinion preempts this entire line of authority.

*The Home–Rule Amendment*

The same reasoning dictates the majority's response to the City's argument that its immunity is not derivative of the State's immunity, but derives from the home-rule amendment to the Texas Constitution and can, therefore, be asserted against the State. The majority opines that the amendment does *not* make municipalities their own sovereigns for purposes of immunity, stating, "The opposite is true. Like all municipalities, home-rule municipalities still 'represent no sovereignty distinct from the State and possess only such powers and privileges as have been expressly or impliedly conferred upon them.'" *Lake Charles Harbor & Termi-*

---

**3.** The term "governmental immunity" merely recognizes the derivative nature and restriction to governmental functions of the sover-

eign immunity conferred on a political subdivision by the State.

*nal Dist. v. Bd. of Trustees of Galveston Wharves,* 62 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Since the home-rule amendment does not confer immunity, the majority concludes, a home-rule municipality has no immunity to damage suits by the State by virtue of that amendment. I agree with the majority in part and disagree in part.

The home-rule amendment gives cities with more than 5,000 inhabitants, like Galveston, the right to adopt or amend their charters by majority vote at elections held for that purpose. Tex. Const. art. XI, § 5. As the majority states, the amendment eliminated the practice of having the legislature grant and amend special charters and, instead, allowed qualifying municipalities to adopt and to amend their charters without legislative approval, so long as a charter did not infringe upon the state Constitution or laws passed by the Legislature. *See id.;* Tex. Loc. Gov't Code Ann. § 51.072 (Vernon 1999); *City of San Antonio v. Boerne,* 111 S.W.3d 22, 26 & 26 n. 5 (Tex.2003); *Anderson v. Brandon,* 121 Tex. 188, 47 S.W.2d 261, 262 (1932). Because of this amendment, municipalities adopting a home-rule charter, like Galveston, have "the full power of self government and look to the Legislature only for limitations on their power." *Perry v. Greanias,* 95 S.W.3d 683, 694 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *accord City of Galveston v. Giles,* 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("Under Article 11, § 5 . . . , the City's powers are plenary, subject only to the limitations of the City's own charter, ordinances, and superior statutes.").

I agree with the majority that the home-rule amendment " 'effectively created home rule cities as 'mini-legislatures' " and authorized them "to do anything [that] the legislature could theretofore have authorized them to do." *See City of San Anto-*

*nio,* 111 S.W.3d at 26 n. 5; *Forwood v. City of Taylor,* 147 Tex. 161, 214 S.W.2d 282, 286 (1948) (describing home-rule municipality as "a delegate of legislative power"). I also agree with the majority's conclusion that, "In this sense home-rule cities derive their powers from the Texas Constitution." The home-rule amendment thus confers governmental power—the power to legislate—on certain municipalities through constitutional enactment.

Because the home-rule amendment confers the power to legislate on home-rule municipalities, those municipalities enjoy derivative governmental immunity from suit in the exercise of that power. But it does not follow that, because a home-rule municipality enjoys conferred legislative power to amend its charter, hence enjoys derivative immunity, it has no immunity to a suit for damages by the State for its negligence in exercising in exercising that legislative power. Under the home-rule amendment, as before, a municipality's governmental immunity derives from the State's conferring upon it governmental powers and, with them, sovereign immunity; and, as before, the principle that the sovereign cannot be sued without its own consent, *i.e.,* without legislative waiver, still applies.

### Eagle Pass and Policy Consequences

The majority relies principally for support for its reasoning and conclusion on *Texas Workers' Compensation Commission v. City of Eagle Pass/Texas Municipal League Workers' Compensation Joint Insurance Fund,* 14 S.W.3d 801 (Tex.App.-Austin 2000, pet. denied). I believe this reliance is misplaced. In *Eagle Pass,* the plaintiff, TWCC, a statewide agency like TxDOT, assessed administrative penalties against the City of Eagle Pass and its transportation authority ("Capital Metro") for their having made late benefits payments in violation of the Labor Code. *See*

*id.* at 803 (citing TEX. LAB.CODE ANN. § 409.023(Vernon 1996)). The City and Capital Metro admitted the violations, but claimed they were immune from administrative penalties under the sovereign immunity doctrine. *See id.* The court recognized the statutory authority of the TWCC to review and audit the records of insurance carriers to determine whether they were in compliance with the Workers' Compensation Act. *Id.* at 802 (citing TEX. LAB.CODE ANN. § 414.001–.007(Vernon 1996) and 28 TEX. ADMIN. CODE §§ 180.1–.8 (Vernon 1999)). It also pointed out that the definition of "insurance carrier" in the statute included self-insuring political subdivisions and that the City and Capital Metro were undisputedly self-insuring "political subdivisions." *Id.* at 803 (citing TEX. LAB.CODE ANN. § 401.011(27)(c) (Vernon Supp.2004)). Thus they were in the class of entities subject to the statute.

The court of appeals could have decided *Eagle Pass* on purely statutory grounds, and it could have reached the same conclusion it did, namely that the City and Capital Metro enjoyed no immunity to administrative penalties assessed *by legislative permission* under the Labor Code. Had the court done so, its ruling would have been consistent with the long line of Supreme Court cases holding that any party which sues a governmental entity must establish legislative consent to suit. Instead, like the majority in this case, the *Eagle Pass* court reasoned that immunity from suit was "inapplicable" to the State's assessment of administrative penalties against the municipal entities. *Id.* In its view, "[m]unicipalities are created as political subdivisions of the State" and "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them"; thus, "[b]ecause political subdivisions of the State do not possess such independent sovereignty,

they have no immunity as against the State." *Id.* at 803–04.

In my view, the court of appeals' rationale in *Eagle Pass* is unnecessary to its disposition of the case, conflicts with well-established law, and is erroneous; but the majority's opinion in this case, which adopts that reasoning, goes well beyond *Eagle Pass*. First, there is no statutory authority to support the majority's decision that Galveston lacks immunity to TxDOT's tort claims, unlike the statutory authority provided by the Labor Code in *Eagle Pass*. Second, the majority's holding contravenes the plain language of the applicable statute, the TTCA, whereas, in *Eagle Pass*, the Legislature had expressly conferred on the TWCC, by statute, the authority to levy administrative penalties on self-insured municipalities like Eagle Pass. Thus, the majority here confers on a state agency by judicial fiat the power to sue another governmental entity for damages for acts for which that governmental unit would otherwise be immune from suit, and it does so without any reliance on legislative authority, with potentially far-reaching consequences.

As the majority acknowledges, sovereign immunity protects the public treasury by preventing the shifting of tax resources away from their intended purposes and towards defending lawsuits and paying judgments. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003); *IT–Davy*, 74 S.W.3d at 854. The majority also acknowledges that allowing the State (or a state agency) to recover damages from a municipality shifts funds from the local to the state level, depleting local coffers of funds that have likely already been budgeted for local matters. However, it rationalizes its decision to permit such shifting of funds from one taxing authori-

ty[4] to another on the ground that the loss to one governmental entity and taxing authority, the municipality, replenishes other public funds—those allocated in the state budget for projects of the State and its agencies—that were lost due to the municipality's fault.

The majority fails to recognize that the inevitable consequence of its decision to permit a state agency to sue a municipality for damages for negligence in the performance of governmental functions is the shifting of public funds from one sovereign taxing authority to another by *judicial decree*, without any authorization for such shifting of sovereign powers by the Texas Legislature or by the people of the municipal taxing unit. There is no authority for such a judicial assertion of taxing authority in the Texas Constitution or laws, and the majority cites to none. It merely falls back upon its assertion that since a municipality's immunity to suit for damages derives from the State it cannot be asserted against the State.

As this Court itself has observed, "Like the power of taxation, the power to manage fiscal affairs 'is an essential and inherent attribute of sovereignty belonging as a matter of right to every independent government.'" *Perry*, 95 S.W.3d at 694 (quoting *City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308, 309 (Tex. 1936)).[5] Nor does it matter whether a political subdivision of the State enjoys the power to manage its fiscal affairs by legislative act or by constitutional directive; a municipality that has such power is exer-

cising "an essential and inherent attribute of sovereignty" enjoined upon it as a governmental function by constitutional or legislative decree; and it is, therefore, immune to private *or State* suits for damages that interfere with that power, in the absence of an express legislative directive otherwise.

A governmental entity's power to manage its fiscal affairs may not be readjusted by judicial action. Rather, as the Texas Supreme Court has recently stated, "We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function.... Indeed, in the Code Construction Act, the Legislature expressed its desire to maintain control over sovereign immunity '[i]n order to preserve [its] interest in managing state fiscal matters through the appropriations process.'" *IT–Davy*, 74 S.W.3d at 854 (citing Tex. Gov't Code § 311.034). The Court explained,

> Subjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments. Accordingly, the Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear.

---

**4.** The home-rule amendment enables cities to "levy, assess and collect such taxes as may be authorized by law or by their charters," subject to certain restrictions designed to limit the amount of taxes that the city may levy in a year and to restrict the creation of debt. Tex. Const. art. XI, § 5.

**5.** The Court explained, "Without such ability, a home-rule city such as Houston would be

unable to provide the essential services it owes its citizens. As part of its fiscal responsibility, the city owes a duty to its inhabitants to prevent waste of public funds, which are held in trust for the accomplishment of certain municipal purposes.

*Perry*, 95 S.W.3d at 694.

*Id.* A court's subjection of any of the entities that form the government of the State to liability in the exercise of their governmental functions usurps a vital function of the Legislature.

The majority reasons, however, that the people acting through the branches, agencies, and departments of state government (but not municipalities) are sovereign; the Attorney General in representing TxDOT, a state agency, in this case represents the people; therefore, TxDOT, as represented by the Attorney General, is not usurping legislative power by bringing this suit, but is acting in the name of the people to replenish public coffers depleted through the fault of the City; nor, by extension, is this Court usurping power by entertaining this suit. This reasoning and this conclusion, however, misapprehend the guiding principle of representative government, namely that government may be said to be government "of the people, by the people, and for the people" only because, at *all* levels of government, representatives of the people exercise the powers conferred upon them by the people. It is a misstatement of this principle to assert that state agencies and the executive officials who represent them represent the people, but municipalities and their representatives do not.

This line of reasoning also violates not only the reasoning and the rule in *IT–Davy*, but also the constitutional separation of powers doctrine. That doctrine mandates that "no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1; *see also Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 47 S.W.2d 265, 274 (Tex.1932) ("The sovereign power of our government rests with the people. The Constitution ... represents the expression of the will of the people and in the light of the history of governments, its adoption is for the purpose of preserving certain rights and prescribing certain powers under which the Legislature, the executive and the judiciary perform their functions"). It is a contravention of the doctrine of separation of powers for a state agency or official of the executive branch—rather than the Legislature—to assert the authority to determine which entities may be sued by the State and which cannot; and it is a further contravention of that doctrine for a court to assert the authority to determine the sovereign immunity of branches of government without reference to any constitutional provision or statutory authority and for it to permit one governmental entity endowed with immunity to sue another entity so endowed without express legislative consent.

The effects of the majority's opinion are not limited to judicial and executive infringement on the Legislature's power to make fiscal policy. As amicus the Texas Association of School Boards Legal Assistance Fund points out, the Texas Supreme Court has rejected a number of arguments seeking to prove a waiver of sovereign immunity through actions other than legislative acts. *See IT–Davy*, 74 S.W.3d at 858 (refusing to find contractual waiver of Texas Natural Resource Conservation Commission's immunity from suit); *General Servs. Com'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001) (refusing to find State's waiver of immunity from suit simply by contracting with private party). In *IT–Davy*, the Supreme Court not only refused to find that a waiver of the TNRCC's immunity by contract; it also refused to find a legislative waiver of immunity in provisions of the Texas Water Code permitting a person affected by an act or omission of the TNRCC to seek judicial review. It stated,

The Code Construction Act provides that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE § 311.034. And, the Legislature knows how to clearly and unambiguously waive sovereign immunity from suit. For instance, the Texas Tort Claims Act provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter." TEX. CIV. PRAC. & REM.CODE § 101.025(a).

*IT–Davy,* 74 S.W.3d at 859. (Significantly, the TTCA does *not* provide for a waiver of sovereign immunity for the acts upon which TxDOT has sued the City.) As Amici assert, if sovereign immunity is *not* waived by any of the cited actions, but *is* waived by the Attorney General acting without any statutory authority in this case (or if waiver need not even be considered because the City enjoys no immunity against TxDOT, its sovereign), an entire body of law governing sovereign immunity and its waiver is rendered meaningless. The majority avoids this conclusion by reiterating that a statute cannot waive immunity a municipality never had, *i.e.,* immunity to the State's suits against it.

Nor does the majority come to grips with the City's very serious argument that no principled distinction can be made among political subdivisions of the State deemed to share in the sovereign immunity of the State and those deemed to have only "derivative" immunity, hence to have no immunity at all to suits for damages brought against them by the more privileged "sovereign" entities. The majority's attempt to define its terms, distinguish relevant cases and apposite rules of law, and limit its holding signals just how troubled its opinion is.

The majority claims to have solved the problem of distinguishing those govern-mental entities considered to be the State, hence to have sovereign immunity to suits for damages by the State, from those governmental entities considered to have only derivative governmental immunity, hence to be subject to suits for damages by the State, by borrowing the general distinction between State entities and political subdivisions set out in *Monsanto Company v. Cornerstones Municipal Utility District,* 865 S.W.2d 937, 940 (Tex.1993) and *Guaranty Petroleum Corporation v. Armstrong,* 609 S.W.2d 529, 531 (Tex.1980). According to this definition, as recapped by the majority, 'State' entities "have statewide jurisdiction, have a governing person or body that is elected in statewide elections or is appointed by a state official, and lack the power to assess or collect taxes." By necessary implication, governmental entities that fail to satisfy these criteria lack immunity to damage suits against them by the State. But piggy-backing the majority's distinction between governmental entities subject to suits for damages by the State and governmental entities immune from such suits on the general distinction drawn in *Monsanto* and *Guaranty Petroleum* between political subdivisions and the State entails absurdities.

By expressly excluding all entities that have the power to assess or collect taxes from the definition of state entities entitled to sovereign immunity against the State, the majority excludes the Legislature from the definition of the State and subjects it to suits for damages by executive agencies. Moreover, as it acknowledges, the majority opens the coffers of all other 'non-State' governmental taxing authorities to the State's raids on their treasuries. And its criteria for determining which governmental entities may be sued by other governmental entities have political consequences, decreeing, for example,

that political subdivisions, like school districts, may be sued for damages by State agencies, but State entities, such as universities, may not be. *See Taylor,* 106 S.W.3d at 694 n. 3 (characterizing "counties, cities, and school districts" as political subdivisions and "agencies, boards, hospitals, and universities" as "divisions of state government"). Finally, the majority's definition of the State, combined with its holding that the State is exempt from abiding by the Texas Tort Claims Act, rewrites the Act. Henceforth, the TTCA governs a political subdivision's immunity from claims for damages in the exercise of its governmental functions *except* when the subdivision is being sued by the State. An exemption the Legislature did not write thus governs the outcome of this case and many more to come.

I fear the majority is opening a Pandora's box of future litigation over which governmental entities enjoy the sovereign immunity of the State, and are thus entitled to sue other governmental entities, and which governmental entities have merely derivative immunity and are subject to such suits, with immense potential damage to the foundational principles of representative government and the separation of powers. More immediately, I fear the majority is opening municipal coffers to potential plunder by state agencies, with no permission from the Legislature for this rearrangement of the State's own carefully crafted laws.

I do not intend to imply, nor do I believe, that the State, acting through the Legislature by statute or resolution, lacks the power to authorize suits for damages by governmental entities against other governmental entities that negligently perform governmental functions for which they would otherwise enjoy immunity to suit. However, action authorizing such litigation should be taken deliberately, by the Legislature, not by an executive agency or official utilizing the court system to obtain judicially that which the Legislature has not expressly authorized; nor should a court endorse such litigation.

For the foregoing reasons, I cannot agree with the majority opinion, and I respectfully dissent. I would affirm the judgment of the trial court.

TERRY JENNINGS, Justice, dissenting from the denial of en banc consideration.

The panel opinion and this court's denial of en banc consideration of this case will send a shockwave of grave concern through every local governmental unit throughout the entire state—every city, every county, every school district, every municipal utility district. The panel's holding that "governmental immunity does not shield a municipality from the State's suit asserting tort claims for actual damages because any immunity that a municipality enjoys derives from the State's own immunity," in effect, judicially creates a state sovereignty exception to governmental immunity for all local governmental units, subjecting them to unlimited tort liability when they are sued by a state governmental unit—all without express consideration of or approval by the Texas Legislature. Accordingly, I agree with Justice Keyes's dissent, and I respectfully dissent from the denial of en banc consideration.

**Background**

In its original petition, the Texas Department of Transportation (the Department) alleges that the City of Galveston (the City) "negligently caused damage to property belonging to Plaintiff, [the Department]." It is undisputed that the Department's negligence cause of action for

property damages arises out of the City's performance of a governmental function.

## Municipal Liability

Under Texas law, "[a] city is immune from liability for its governmental actions," unless the Legislature has expressly waived governmental immunity. *City of La Porte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). Governmental immunity from suit defeats a court's subject matter jurisdiction. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). In a suit against a governmental unit, a plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Id.*

The Texas Supreme Court has long recognized that "it is the Legislature's *sole province* to waive or abrogate" governmental immunity. *Tex. Natural Res. Conservation Com'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002) (emphasis added); *see also Barfield,* 898 S.W.2d at 291 ("The waiver of governmental immunity is a matter addressed to the Legislature."). The Texas Supreme Court has consistently deferred to the Legislature to waive sovereign immunity from suit "because this allows the Legislature to protect its policymaking function." *IT–Davy,* 74 S.W.3d at 854. Moreover, it is a well-established rule that, for the Legislature to waive immunity, "it must do so by clear

and unambiguous language." *Barfield,* 898 S.W.2d at 291.

Under title 5 of the Texas Civil Practice and Remedies Code (the Texas Tort Claims Act),[1] entitled "Government Liability," in subchapter B, entitled "Tort Liability of Governmental Units," the Legislature "waived and abolished" sovereign immunity from suit "to the extent of *liability created* by this chapter." TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997) (emphasis added).[2] In section 101.0215, entitled "Liability of a Municipality," the Legislature specifically noted that

> A municipality *is liable* under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. . . .

*Id.* § 101.0215 (Vernon Supp.2004–2005) (emphasis added).

In regard to negligence actions brought against governmental units arising from their governmental functions, in section 101.021, entitled "Governmental Liability," the Legislature expressly provided that

> A governmental unit in the state *is liable* for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the neg-

---

**1.** TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.2004–2005).

**2.** My point is not, as characterized in the majority opinion, that *"because section 101.021 does not mention that common-law immunity does not extend to suits brought by the State,* the Legislature must have believed that common-law immunity applies to governmental units regardless of who sues them, including the State." (Emphasis added.) Rather, the Legislature, understanding the concept of sovereign immunity and intending

to waive and abolish sovereign immunity from suit in very limited circumstances, statutorily "created" limited liability for governmental units, including municipalities. It took certain tort claims against governmental units out of the hands of the common law and codified those claims in legislation. The Legislature did this in a chapter entitled "Government Liability," a subchapter entitled "Tort Liability of Governmental Units," and sections entitled "Liability of a Municipality" and "Governmental Liability."

ligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021 (Vernon 1997) (emphasis added). A "governmental unit" is defined as "a political subdivision of this state, including any city." *Id.* § 101.001(3)(B) (Vernon Supp.2004–2005).

Regardless of whether a city's governmental immunity from tort liability derives from the State's sovereign immunity, a city, as a "governmental unit" enjoys that immunity against all plaintiffs, period. The Legislature, recognizing that cities enjoy governmental immunity from liability for their governmental functions, has expressly provided that municipalities are "liable" for property damages "arising from their governmental functions" *only* in the limited circumstance in which the property damages are proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the property damages arise from the operation or use of a motor-driven vehicle or motor-driven equipment. *Id.* §§ 101.021, 101.0215. According to the Texas Legislature, this is the only circumstance in which a plaintiff—any plaintiff—may sue a municipality for property damages arising from its performance of a governmental function.

Moreover, it does not logically follow that "because any immunity that a munici-

pality enjoys derives from the State's own immunity," a city's "governmental immunity does not shield" it from tort claims asserted by state governmental units. The public policy underlying sovereign and governmental immunity is simply that "[s]ubjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments." *IT–Davy*, 74 S.W.3d at 854. This public policy applies equally to all governmental units, not just to state governmental units. As noted above, the Texas Supreme Court has deferred to the Legislature to waive sovereign immunity from suit because "the Legislature *is better suited than the courts* to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear." *Id.* (emphasis added). In fact, "in the Code Construction Act, the Legislature expressed its desire to maintain control over sovereign immunity '[i]n order to preserve [its] interest in managing state fiscal matters through the appropriations process." *Id.* (quoting Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2004–2005)).

The bottom line is that, if the Texas Legislature wants to subject municipalities and other local governmental units to unlimited liability in negligence suits brought by state governmental units, it can amend the Texas Tort Claims Act to allow for such liability. However, this is not a job for an intermediate court of appeals.

Finally, it must be noted that the majority's reliance on the reasoning and conclusion of *Texas Workers' Compensation Commission v. City of Eagle Pass/Texas Municipal League Workers' Compensation Joint Insurance Fund*, 14 S.W.3d 801 (Tex.App.-Austin 2000, pet. denied), is mis-

placed. The point of *Eagle Pass* was not that governmental immunity does not shield a municipality from tort claims asserted by the State, but that "because municipalities and other political subdivisions of the State exist under the authority of the State and *are subject to the State's regulatory authority,* such entities do not enjoy sovereign immunity *from state regulatory authority." Id.* at 803 (emphasis added). Accordingly, the *Eagle Pass* court sustained "the Commission's contention that sovereign immunity *is inapplicable in the present situation." Id.* at 804 (emphasis added). This is a far cry from subjecting all local governmental units in Texas to unlimited tort liability in lawsuits brought by state governmental units "because any immunity that a [local governmental unit] enjoys derives from the State's own immunity."

## Conclusion

Immunity means immunity, *i.e.,* immunity from suit or liability as to all potential plaintiffs—including state governmental units. Regardless of any "derivative" nature of sovereign immunity, the Legislature, in the Tort Claims Act, has expressly defined, quite literally, the "governmental liability" of municipalities and all other governmental units as to all potential plaintiffs. Thus, the panel's broad holding judicially creates an exception to the Legislature's expressly stated limits of liability for local governmental units,[3] and the primary effect of the holding is that it relieves the State of the deficiency of its own pleadings. Accordingly, en banc consideration of the panel's extraordinary holding, especially in light of its far-reaching effects, is required. *See* TEX.R.APP. P. 41.2(c).

As noted in the amicus curiae briefs filed by the Texas Municipal League, the Texas City Attorney's Association, the Texas Council Risk Management Fund, the Texas Water Conservation Association Risk Management Fund, and the Texas Association of Counties in support of the City of Galveston:

> [I]ntermediate appellate courts wisely tend to refrain from recognizing new areas of liability, and, in this particular instance, the court of appeals is compelled to exercise restraint because the exclusive power to consent to suit against governmental units resides in the Legislature, not the courts.

I agree. This Court should give due consideration to the good-faith counsel of amici.

---

3. The Texas Supreme Court has noted that "it is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). As explained by the Court of Criminal Appeals, Courts have no power to legislate. It is [a] court's duty to observe, not to disregard statutory provisions. Courts can neither ignore nor emasculate the statutes. Further, courts have no power to create an exception to a statute, nor do they have power to add to or take from legislative pains, penalties and remedies. *State v. Ross,* 953 S.W.2d 748, 751 n. 4 (Tex. Crim.App.1997) (quoting *Ex parte Hayward,* 711 S.W.2d 652, 655–56 (Tex.Crim.App.1986) (citations and footnotes omitted)).